[File No. 7194]

THE CITY OF BISMARCK, a Municipal Corporation, Respondent, v. T. CLEM CASEY, Appellant.

(43 NW2d 373)

Opinion filed June 17, 1950

*John A. Zuger,* for appellant.
*William R. Pearce,* for respondent.

BRODERICK, Dist. J. This is an appeal from a judgment of the District Court of Burleigh County, North Dakota, in an action brought by the City of Bismarck, North Dakota, a municipal corporation, against the defendant, T. Clem Casey, to condemn a tract of land 33 feet wide and 1999.41 feet long, for the purpose of widening Boulevard Avenue in the City of Bismarck. Boulevard Avenue, at the time of the commencement of the action, was of the width of 33 feet and the City of Bismarck brought the action in condemnation for the purpose of acquiring the additional 33 feet strip of land in order to widen Boulevard Avenue to a width of 66 feet.

This action was instituted under the provisions of Section 40–3902 RCND 1943 which, in so far as it is material, reads as follows: "If it is necessary to take private property in order to open, lay out, widen, or enlarge any street or alley in any incorporated municipality, it shall be done by purchase or by the exercise of the right of eminent domain. . . ."

The defendant, T. Clem Casey, by his attorney, admitted the necessity of the taking of the property for public purposes, so that the only question for trial by the Court was the amount of damages that should be awarded to the defendant for the taking of said property.

The judgment was in favor of the plaintiff, City of Bismarck, and against T. Clem Casey, defendant, in so far as the necessity for the taking of the property is concerned, upon the payment by the City of Bismarck to the defendant of the sum of $1031.25, which the court found to be the reasonable market value of the tract of land taken. The court further found that the portion of the contiguous property owned by the defendant in this action, not sought to be condemned, will be benefited by the widening of Boulevard Avenue in an amount equal to any damage

suffered by reason of the severance of that portion of the property sought to be condemned by the plaintiff in this action.

The defendant has demanded a trial de novo limited to the questions of the value of the property taken and the damages accruing to the contiguous property owned by the defendant but not sought to be condemned in this action.

In view of the fact that the defendant has demanded a trial de novo, limited to the questions of the value of the property and the damages accruing to the contiguous property owned by the defendant, this court must examine the record bearing on those questions and find the facts for itself. However, the findings of the trial court are entitled to appreciable weight when the case is before this court on a trial de novo, especially when the trial court has viewed the premises involved, and the witnesses have appeared before him personally and he had the advantage of observing their demeanor and manner of testifying. See Coykendall v. Briggs, 60 ND 267, 234 NW 74, and other cases therein cited.

The attorney for defendant Casey contends that the testimony of the witness, Price Owens, should have been stricken from the record and entirely disregarded by the trial court because of the fact that he claims the witness disqualified himself, on cross examination, as an expert witness as to the value of the real estate involved in this action. However, as shown by the official transcript of the testimony, the witness Owens testified that he was familiar with the 33 feet strip of land in question; that it had little or no market value; that the taking of the 33 feet strip would enhance the value of the defendant's remaining property; that there was no value for this strip of land other than for the purposes for which it was being condemned; that each 80 feet of this 33 feet strip of land would have a value of $41.25 and that the total value of the whole 1999.41 feet strip, figured on the same basis, would amount to $1031.25, which was the value placed on this strip of land by the trial judge. The witness Owens further testified that the value he placed on this land would amount to about $250.00 per acre.

"It is well settled that whether a witness offered as an expert is qualified to give an opinion rests very largely in the discre-

tion of the presiding judge whose discretion will not be reviewed unless clearly erroneous as a matter of law." Johnson v. Lowell, 240 Mass 546, 549, 134 NE 627; Muskeget Island Club v. Nantucket, 185 Mass 303, 70 NE 61; Carroll v. Boston Elevated Railway Co., 200 Mass 527, 86 NE 793; Carter v. Boston & N. St. Ry. Co., 205 Mass 21, 91 NE 142.

In the case of Wahlgren v. Loup River Power District, 139 Neb 489, 297 NW 833, the Supreme Court of Nebraska held, "The determination of the qualifications of witnesses to testify as to damages in condemnation proceedings is one resting in the trial court's sound discretion."

On the other hand, the testimony of the defendant Casey and his two witnesses, J. P. Schmitz and John Stein, all of whom qualified as expert witnesses on the subject of real estate values, was to the effect that they knew of no purpose for which this 33 feet strip of land could be used other than for street or road purposes in view of the fact that it was in a residential zone in the City of Bismarck; that aside from that, that strip of land had no other market value; that they knew of no other market value except that it would be held for "speculative purposes" on the theory that the people who had purchased the building sites north of the 33 feet strip in question would some day in the future be forced to buy it in order to have a way of ingress and egress from their property to Boulevard Avenue; in other words the only value that it would have would be, as stated by the expert witness, J. P. Schmitz, that as a "Speculative investment on the theory that I would hold until the adjoining owner was ready to buy and have a way in and out." "I would buy it and would hold it until they had to buy it to get in and out. Q. Its only value as you see it, is to the adjoining landowners for having a means of access in and out of the public street? A. That is right." "Q. Well, now, you have stated, however, that the only value that these strips that are between somebody else's land and the street, have, is a possible speculative value to the owners that have adjoining lands? A. That's right. It has no other value. Q. It can't be used for anything else? A. No, it can't. Q. And you would not expect to go out

and find any other customer that would pay anything for it? A. That is right."

To the same effect is the testimony of the defendant Casey, himself, the official transcript reading as follows: "Q. As I understand your testimony and the testimony of the witness offered by you, Mr. Schmitz, you are both substantially agreed that the thirty-three feet strip, as such, has no market value? A. Very little, if any."

Of course, the use of any such element as a "future speculative" value on the theory that the adjoining land owners would be forced or compelled to buy it in order to have a right of way for ingress and egress to their property is an improper element to be taken into consideration in fixing the reasonable market value of land in a condemnation proceeding because it assumes a forced or compulsory purchase by the adjoining land owners at some future time. There is a presumption in the technical and proper meaning of the term "reasonable market price" that the price of the land sold is fixed freely, not under compulsion. A person may be compelled by force of circumstances to purchase a piece of property but involuntary purchases, such as contemplated by Mr. Casey and his expert witness, Mr. Schmitz, imply force or compulsion. See Epstein v. Boston Housing Authority (1944) 317 Mass 297, 58 NE2d 133. Also Forest Preserve District v. Eckhoff, 372 Ill 391, 24 NE2d 52.

As stated in the case of Amory v. Commonwealth, 321 Mass 240, 72 NE2d 549, 174 ALR 370, "If it had been a price fixed by a jury, *or in any way compulsorily paid by the party,* the evidence of such payment would be inadmissible before the jury. . . . A sale (or purchase) produced by compulsion exerted on the seller by the buyer (or vice versa, by the seller on the buyer) is not a standard of fair market value."

It was said in Epstein v. Boston Housing Authority, supra, "We think there is a presumption, in the technical and proper meaning of that word, that the price of land sold was fixed freely and not under compulsion."

The defendant Casey has cited the case of, In re City of Seattle, Interlaken Land Co. v. City of Seattle, 47 Wash 603, 92 Pac 423. In that case the court said:

"We do not concede that the appellant was entitled to a verdict for such sum as he might be able to obtain under the peculiar circumstances when a price greater than the fair market value could be obtained, nor for a speculative value nor for a value that the owner might obtain through the necessity of others."

"The general rule is stated in Eminent Domain by Lewis, Third Edition, Volume II, page 1227 sec. 706, as follows:

"In estimating the value of property taken for public use it is the market value of the property which is to be considered. The market value of property is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it and is bought by one who is under no necessity of having it."

"The determination (of value) is to be made in the light of all facts the facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend upon events which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of Courts." Olson v. United States, 292 US 246, 254, 256, 257, 54 S Ct 704, 708, 709, 78 L ed 1236, 1244, 1245, 1246. Other cases cited.

"We have already referred to the fact that the landowner occupies the position of plaintiff and, as such, has the right to open and close. Like any other action for recovery of damages, he who claims such has the burden of proving them. That too was plaintiff's situation. The question of damages going to him by the condemnation was the only question for the jury's consideration and determination." Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 277 NW 394, 201 Minn 442; Otter Tail Co. v. Von Bank, 72 ND 497, 8 NW2d 599.

The defendant Casey, after detailing the formula which he followed in arriving at the market value of his property, and the main element which he used in determining such market value being the speculative value which he thought he could force

and compel the adjoining owners of residential lots to pay for his land under the compulsion that they would have to buy it in order to have a way of ingress and egress to their property, arrived at the figure of $10,629.60 and his witnesses, on the same basis, arrived at somewhat similar figures. Of course that was an improper element to consider in arriving at the market value of the property to be taken and the trial court committed no error in rejecting the evidence of such market value based on any such theory.

As stated in the case of, In re Widening of Michigan Avenue, 280 Mich 539, 273 NW 798, "Many technical rules have been promulgated for determining value, none of which are important. The determination of value is not a matter of formula or artificial rules, but a sound judgment and discretion, based upon a consideration of all of the relevant facts in a particular case. In re Widening of Bagley Avenue, 248 Mich 1, 226 NW 698."

"The jury may listen to the opinions of witnesses, their estimates of value, and their methods of arriving at the conclusions expressed, but the jury (and in this case the trial court) is not bound by the testimony alone. They are to exercise their judgment, based not only upon the testimony, but their own knowledge gained from a view of the premises." See Commission of Conservation, etc. v. Connor, 316 Mich 565, 25 NW2d 619, 626.

In the case at bar the court, by agreement of counsel, viewed the premises and the same rule would be applicable to the court as would be applicable to the jury under like circumstances.

Therefore, in this case, the trial court committed no error in rejecting the testimony of the defendant and his expert witnesses as to their estimates of the reasonable market value of the strip of land in question, based on a formula containing the element of future prospective and speculative values as to what price could be obtained by compulsion from the property owners abutting the 33 feet strip of land, by virtue of the fact that the defendant figured they would have to eventually purchase a portion of the strip in order to get in and out of their property.

Of course the defendant was laboring under a false premise and impression in his theory that the owners of the lots would

be compelled to purchase any portion of the 33 feet strip in order to have a way of ingress and egress from their property to the street. As stated in the case of Badura et al. v. Lyons, 147 Neb 442, 23 NW2d 678 (Syllabus 6) "Where a conveyance is made of realty separated from the highway by other realty of grantor or surrounded by his realty or by his and that of third persons, there arises, by implication, in favor of the grantee, a way of necessity across said premises of the grantor to the highway."

(Syllabus 5) "A 'way of necessity' is an easement arising from an implied grant or implied reservation, and is result of application of principle that whenever one conveys realty, he conveys whatever is necessary for the beneficial use of the realty and retains whatever is necessary for the beneficial use of the realty he still possesses."

In the case of Douglas v. Jordan, 232 Mich 283, 205 NW 52, the Supreme Court of Michigan said: "Where the owner of land conveys a parcel thereof which has no outlet to the highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining land of the grantor."

The Court further held: "One who purchases land with notice, actual or constructive, that it is burdened with an existing easement takes the estate subject to the easement. . . . He has no greater right than his grantor to prevent or obstruct the use of the easement." (citing a number of cases)

In the case of Wauban Beach Ass'n. v. Wilson, 274 Mich 598, 265 NW 474, 103 ALR 989, the court said, "A way of necessity does not ordinarily exist as an appurtenance, but arises from an implication of law from the principle that, where anything is granted, the means to attain it are granted, and by a grant of ground is granted a way to it." Sheppard's Touchstone, p 89. The rule based upon the authorities is thus stated: "If land be granted (or excepted) to me; hereby also implicitly (by implication of law) is a way thereunto granted (or excepted) to me also. So that if one have twenty acres of land, and grant me one acre in the midst of it, hereby inclusive there is granted to me a way to it. . . . A way of necessity is just what it pur-

ports to be, a way arising by implication of law out of the necessities of the case. . . . A way of necessity is based upon an implication of an intended grant, and the use of it is based entirely upon such implication or consent to its use."

"This doctrine of the creation of easements by implication rests upon exceptions to the rule that written instruments speak for themselves." 17 Am Jur Easements, Sec. 32, p 945, note 15.

"Quasi easement arises out of circumstances from which the court finds an indication of the probable intention of the parties. Tiffany asserts (p 1273) that the question of whether an easement is created by an implied grant is one of construction of the deed, and that, as an aid to construction, courts have said that when certain characteristics, such as continuity, apparency, and necessity, exist, a grant will be implied." 17 Am Jur Easements, Sec 48 p 959.

In the case of Banks v. School Directors, 194 Ill 247, 62 NE 604, the Supreme Court of Illinois held, "If one grants a piece of land in the midst of his own land he thereby impliedly grants a way to reach it," quoting Kents Commentaries.

"It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway. In other words, if one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it. A rule of sound public policy—namely, that lands should not be rendered unfit for occupancy or successful cultivation—supports the implied grant or reservation of ways of necessity. These ways are of common-law origin." 17 Am Jur Easements, Sec 48, pp 960–961.

It seems to this court that the above statement of law would apply with more than ordinary force to the facts in the case at bar. The deeds executed by the Bismarck Land & Improvement Company, the grantor of the defendant Casey, to all of the parties who bought residence tracts from it, prior to the time that defendant Casey bought the remainder of the land, all described the lots conveyed by metes and bounds and all of these

deeds were so worded that they left this thirty-three feet strip of land in controversy between the lots conveyed by the Bismarck Land & Improvement Co. and Boulevard Avenue, showing an evident intention on the part of the Bismarck Land & Improvement Company either to dedicate that thirty-three feet strip to the use of the public or to afford the parties to whom it conveyed the lots an easement for the purpose of allowing them egress and ingress to the property purchased, from Boulevard Avenue. Therefore, no error was committed by the trial court in overruling the defendant's objection to the receipt of Plaintiff's Exhibit #4, the deed from the Bismarck Land & Improvement. Co., to the defendant, which deed contained a description of all of the other lots or tracts which had been deeded to other purchasers prior to the defendant's deed, on the question of whether or not there was an implied easement or an intentional easement granted by the Bismarck Land & Improvement Co., of a right of way in and out of the lots they had purchased to Boulevard Avenue and on the question of whether or not the defendant had, or in the exercise of reasonable diligence should have, knowledge or notice of such implied easement.

The defendant Casey claims that he had no knowledge of such dedication or easement, notwithstanding that such deeds were on record in the office of the Register of Deeds of Burleigh County and notwithstanding the testimony of the defendant shows that he was acting as agent for the grantor prior to the time he purchased the land in question from the same grantor. The testimony further shows Mr. Casey is a man of wide experience, who has been engaged in the real estate business in the city of Bismarck for many years. He was, therefore, bound to know what an ordinarily prudent man would have known or should have known from any circumstances that would have put him on inquiry. Therefore, he was bound to know, from the contents of his own deed, that the deeds to the other parties to whom his grantor had previously given deeds, showed either an intention on the part of his grantor to dedicate this 33 feet strip to the use of the public or to give such grantees an easement of egress and ingress from the lots which it had sold to them

to Boulevard Avenue; and that, whether the grantor had provided for such easement in the deeds or not, they have such easement as a matter of law.

Section 1-0125 NDRC 1943, provides as follows: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

In the case of McHugh v. Haley, 61 ND 361, 237 NW 835, this court held, syllabus #6: "A subsequent purchaser of a servient tenement is bound to take notice of rights that may be evident upon an inspection of the premises as well as those of which he may learn by an inspection of the records, and where a reasonably careful inspection of the premises followed by inquiry would disclose the existence of an easement, the grantee of the servient tenement takes title subject to the easement to the extent that his grantor is bound thereby." (syllabus #5) "Good faith within the recording act implies absence of information and belief of facts which would render the transaction unconscientious and where a subsequent purchaser has knowledge of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, he has constructive notice of the fact and is not protected as a purchaser in good faith."

The trial court found, from the evidence, that the benefits which would accrue, by the widening of the street, to the defendant's land not taken by the condemnation proceedings, would equal the damages, if any, which would accrue to such land not so taken. This court finds that there was ample evidence to sustain such finding.

Defendant in his specification of error number six claims that the trial court committed error in overruling the defendant's objection to the testimony sought to be elicited on cross examination as to improvement of the property of the defendant not taken by the construction or widening of the highway. In view of the fact that the detriment or benefit which would accrue to the property of the defendant not taken is a proper element to be considered in a condemnation proceeding of this character,

there was no prejudicial error committed by the court in overruling the objection to the testimony elicited by the plaintiff on cross examination as to such proper element of damages or benefits, if any, to the property not taken.

"Many cases, usually under statutes permitting or requiring such deduction, (for benefits) but sometimes without such statutory authority, have held that, in determining the amount of damages to which the owner is entitled as compensation for the taking of land to widen a street, the extent to which his remaining land is benefited may be set off against the damages claimed." (Notes to 64 ALR p 1502)

"In assessing damages for the taking of land for the widening of a street it is proper to assess damages according to frontage, irrespective of whether property was improved or not." In Re New York, 106 App Div 31, 94 NYS 146. (Aff 185 NY 601 Mem, 78 NE 1101 Mem.) (2). "Where the opening of a street consists of widening and establishing a highway by taking a strip twenty feet wide from abutting lands extending back hundreds of feet, and the effect of taking the strip is simply to set the lots so much further back and face them on a wider and improved street, damages for taking the land should be computed on an acreage valuation." (Matter of Weschester Avenue, 126 App Div 839, 111 NYS 351.)

"If the contiguous property is not rendered any less valuable by the improvement there will be no damage resulting to the owner of it as there cannot well be any damage where there is no pecuniary loss." Lewis v. Seattle, 5 Wash 741, 32 Pac 794.

"In some cases but a small portion of the property will be taken and that in such a way that the remainder of the property will be fully as valuable (or more valuable) as it was before the taking." Chicago v. Lord, 276 Ill 544, 115 NE 8. See note to 64 ALR at p 1520.

The defendant contends that the evidence does not sustain the finding of the trial court that the market value of the land at the time of the trial was only $1031.25. In the case of Petersburg School District v. Peterson, 14 ND 344, 103 NW 756, the court said, "The contention is advanced that the evidence does

not sustain the findings of the jury that the market value of the land at the time of the trial was only $300.00. There was a wide discrepancy in the evidence on the question of value as given by the witnesses. There is competent evidence in the record that the value of the land was much less than that fixed by the jury and evidence that its value was much more than was awarded. In view of the contradiction the verdict must stand. It was peculiarly a question for determination by the jury, and there is evidence amply sustaining the verdict."

It seems to this court that the above statement is equally applicable to the situation in the case at bar. The testimony of the plaintiff's witness is to the effect that the market value of the land was the sum of $1031.25, the amount determined and fixed by the trial court, who, in this case, was acting in the place of the jury. On the other hand the witnesses for the defendant fixed the market value of the land at $10,000.00 and over. That was a question for the determination of the trial court from all of the evidence in the case and there is ample evidence to sustain his findings on that point and we agree with such finding. The Judgment is accordingly affirmed.

NUESSLE, C. J., BURKE, GRIMSON and CHRISTIANSON, JJ., concur.

MORRIS, J., disqualified did not participate.