[File No. 7214]

WISHEK INVESTMENT COMPANY, Appellant, v. McIN-
TOSH County, a Municipal Corporation; John Salzer, Fred
Wolf and Andrew Nolz, County Commissioners; and State
Highway Commissioner of the State of North Dakota, Re-
spondents.

(45 NW2d 417)

Opinion filed December 19, 1950

*Edwin J. F. Myers* and *Max A. Wishek,* for appellant.

*Wallace E. Warner,* Attorney General, *Nels G. Johnson,* Sp. Assistant Attorney General, and *B. E. Kretschmar,* for respondents.

Morris, J. This proceeding involves the acquisition of land by the State Highway Commissioner on behalf of the state for the purpose of widening a state highway. The commissioner, pursuant to the provisions of Section 24–0119 RCND 1943, petitioned the Board of County Commissioners of McIntosh County to ascertain and determine the damage and make an award therefor for the taking of the west 75 feet of the south 1930 feet of the southwest quarter of Section 31, Township 130, Range 69, which includes a strip of land 42 feet wide not heretofore dedicated to highway purposes and containing 1.82 acres. On July 26, 1948, the Board of County Commissioners made an award for the value of the land taken on the basis of $50.00 per acre and amounting to $91.00. It allowed for removing 1930 feet of fence the sum of $12.55, making a total award of $103.55. The plaintiff as the owner of the property taken, being dissatisfied with the award, appealed to the district court, where the total award was increased to $374.48.

The Wishek Investment Company has for over 25 years been the owner of the land in question and of a larger tract of which it was originally a part, all within the corporate limits of the City of Ashley. When the Wishek Investment Company was organized, it acquired this tract bounded on the north by Nebraska Street, on the east by a railroad right of way, on the south by

the corporate limits of the City of Ashley, which are coincident with the south line of Section 31, and on the west by the corporate limits that are coincident with the west line of Section 31, and consisting of approximately 40 acres. The plat of the townsite shows this tract to be divided into blocks 366 feet square, except those which border on the railroad right of way, the diagonal location of which produced fractional blocks. The plat shows the blocks to be numbered. The land sought to be taken in this proceeding lies adjacent to the highway and constitutes a strip 42 feet wide and 1930 feet long off the west edge of blocks numbered from north to south as 41, 57, 58, 75 and 76. The larger tract has never been platted into lots and no plat or dedication of streets and alleys appears to have been filed in the office of the register of deeds. For the past several years the plaintiff has sold to various individuals tracts or lots described by metes and bounds, 25 feet wide and 140 feet long. In blocks 41 and 57, and in the west half of the two blocks adjacent thereto on the east, being blocks 42 and 56, the pattern of the descriptions thus sold leaves strips of land 66 feet wide corresponding to extensions of the streets in the platted portion of the city and an alleyway 20 feet wide running north and south through the blocks and back of the tracts conveyed. Title to the strips corresponding to streets and alleys apparently remains in the plaintiff. Whether there has been an implied dedication of these strips, we need not here determine. The prices paid by the purchasers of the tracts range from $100.00 to $200.00 per tract, most of the recent sales being for $150.00. All 12 of the 25 foot tracts or lots in the east half of block 41 have been sold, as well as all the tracts in the west half of block 42, immediately to the east of block 41. In the west half of block 41, which abuts on the highway and embraces a portion of the land sought to be taken, the rear or east half of the two lots on the north next to Nebraska Street have been sold. The Wishek Investment Company still owns the west half of those two lots abutting on the highway. It also owns the remainder of the west half of block 41 and all of the west half of block 57 immediately to the south, with the exception of three 25 foot tracts lying in the

southwest corner of block 57 and abutting on the highway, which have been sold to C. J. Kaul on contract for a deed and are now occupied by Mr. Kaul for the storage of equipment for moving buildings. Kaul also bought the corresponding three tracts lying in the southeast corner of the block. Thus he has purchased the south 75 feet of block 57, except the 20 foot alleyway through the middle. The legal title of the Kaul lots remains in the plaintiff. Extending southward from the Kaul property to the corporate limits are blocks 58, 75, and 76. No tracts have been sold from these blocks. It does not appear that any small tracts have been sold from the larger tract of 40 acres except those lying within blocks 41, 42, 56, and 57.

The trial court found that the value of the three lots sold to C. J. Kaul and abutting on the highway is $200.00 per lot, and that the damage for taking 42 feet from the west end of these lots next to the highway was 30 per cent of the value of the lots, making a total damage to the three lots of $180.00. As to the remainder of the entire tract of 40 acres, he found that it was essentially farm land of the value of $100.00 per acre, and fixed the damages for taking the remainder of the 42 foot strip on the basis of that value, which he computed to be $175.00. The trial court also found that the portion of plaintiff's land not taken suffered no severance damage.

The platted portion of the City of Ashley is, with a few minor exceptions, laid out in lots 25 by 140 feet, with streets 66 feet wide and 20-foot alleys running through the center of each block. There is an extremely wide divergence of testimony as to the value of the land taken. The secretary of the plaintiff company testified that the value of the entire tract of 40 acres before taking was $40,000.00 and that after taking, the value was reduced to $35,400.00, representing a reduction due to the taking of $4,600.00. One real estate dealer testified that the fair market value of the tract taken was between $1100.00 and $1200.00 per acre. Another real estate dealer estimated the value of the land taken to be $1200.00 per acre and the resultant damage to adjacent property to be about $2000.00 or $2400.00. The county commissioners each testified that they appraised the

land taken at $50.00 per acre. An Ashley businessman stated that plaintiff's land was worth $60.00 per acre, both before and after taking of the strip for widening the highway. Another witness engaged in the insurance and real estate business in Ashley testified that the value of the strip taken was $50.00 per acre. A banker from another town in the same county testified that the award of $50.00 per acre made by the Board of County Commissioners was a fair award and about the value of the property. This witness, in referring to the property along the highway, described that portion south of the Kaul property as being low and less valuable than the portion north of the Kaul property, which was high. Other witnesses also testified regarding a depression or slough extending out to the highway and covering an area of some 300 feet north and south. It seems clear that the property in lots 41 and 57 is more valuable than that farther south for two reasons—it is closer to the regularly platted portion of Ashley which extends down to Nebraska Street, the north boundary of the land in question, and that this land is high ground more suitable for building, while south of block 57 the land slopes down into a slough and rises to higher ground again near the south section line.

Compensation for property actually taken and damages for property not taken but injuriously affected by the exercise of the power of eminent domain must be ascertained and assessed pursuant to the provisions of Section 32–1522 RCND 1943.

"The jury, or court, or referee, if a jury is waived, must hear such legal testimony as many be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

"1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed;

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance

from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff;

"3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages;

"4. If the property is taken or damaged by the state or a public corporation, separately, how much the portion not sought to be condemned and each estate or interest therein will be benefited, if at all, by the construction of the improvement proposed by the plaintiff, and if the benefit shall be equal to the damages assessed under subsections 2 and 3, the owner of the parcel shall be allowed no compensation except the value of the portion taken, but if the benefit shall be less than the damages so assessed the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the portion taken;

"5. As far as practicable, compensation must be assessed separately for property actually taken and for damages to that which is not taken."

Under the above quoted statutory provisions, the owner is entitled to be paid the value of the parcel of land taken plus the damages which will accrue to the remainder of the land by reason of its severance from the portion taken and the construction of the highway in the manner proposed. Lineburg v. Sandven, 74 ND 364, 21 NW2d 808.

"In a condemnation action, compensation is not to be estimated simply with reference to the value of the land to the owner for the purpose it is then used, but with reference to what its present value is in view of the uses to which it is reasonably capable of being put." Montana Eastern Railway Co. v. Lebeck, 32 ND 162, 155 NW 648.

Condemnation cases frequently produce a diversity of opinions regarding value and damages. But seldom are the differences so extreme as those presented in this case. The appellant claims that the land taken has a value in excess of $1,000.00 per acre and that the severance damages to the remaining tract is $2,000.00. The respondent contends that the value of the land

taken is $50.00 per acre and there are no severance damages. The appellant bases its value upon the contention that the land taken and the adjacent land is suitable for subdivision into lots 25 by 140 feet, which is valued at $200.00 per lot. The respondent bases its contention upon the assertion that the land taken is part of a larger tract used as pasture and that as pasture or farm land it is worth $50.00 per acre.

The theory of the trial court as indicated by his findings and rulings on the admission of evidence was that all of the property taken was a part of one contiguous larger tract of land, and that the proper measure of damages was the difference in the value of that larger tract before taking and the value of that tract after there had been severed from it the strip of land along the highway 42 feet wide appropriated for highway purposes. Theoretically the result reached would be the proper one. It would be in accordance with the rule of the statute above quoted as to the measure of damages and would result in an award to the appellant of the just amount to which he is entitled. Great difficulty, however, arises in applying the rule to the present situation and in correlating the rules of evidence with the measure of damages.

In City of Bismarck v. Casey, ante 295, 43 NW2d 372, this court said that:

"The determination of value in a condemnation proceeding is not a matter of formula or artificial rules, but of sound judgment and discretion based upon a consideration of all of the relevant facts in a particular case."

C. J. Kaul testified that in June, 1947, he bought from the plaintiff six lots or tracts 25 by 140 feet, lying next to the south side of block 57, three being on the east side and three being on the west side of the block. This gave him a frontage of 75 feet on the highway. This property was purchased on contract for deed and a deed has not as yet been issued to Mr. Kaul. The purchase price was $150.00 a lot. He testified that the lots are now worth $200.00 a lot. His testimony is corroborated, both as to the original price paid and the present value, by that of the

secretary of the plaintiff corporation. The trial court, who viewed the premises, found:

"that the present value of the three lots sold to C. J. Kaul is $200.00 per lot and that the said tract suffers damage of a loss in value of 30 per cent or $180.00,"

As to all other property taken for highway purposes the court found:

"that the said premises are essentially farm land and the court finds the value thereof is the sum of $100.00 an acre but that said tract has some value for subdivision purposes."

Plaintiff's property extends northward from the Kaul lots along the highway a distance of 591 feet to Nebraska Street. Plaintiff's property in blocks 41 and 57 is almost segregated from the main tract of plaintiff's land by the Kaul property and 18 other tracts or lots that have been sold to other parties. Most of these tracts were sold for $150.00 each. These sales fix a policy and pattern followed by the plaintiff over a period of several years of dividing and selling its property in blocks 41 and 57 and the west half of blocks 42 and 56 in lots 25 by 140 feet with ways for streets between the blocks 66 feet wide and for alleys 20 feet wide running north and south through the center of the blocks. The defendants contend that because this tract has not been officially platted and subdivided into lots, this pattern and the selling price or market value of those lots cannot be considered in determining the value of any of plaintiff's property taken for highway purposes. We do not agree with this contention. We are aware the general rule in determining compensation to be paid for farm land taken by eminent domain is that the availability for subdivision purposes may be considered, but not the value or price of each proposed lot. 18 Am Jur, Eminent Domain, Section 244; 29 CJS, Eminent Domain, Section 160. The facts do not warrant the application of that rule to plaintiff's property in blocks 41 and 57. It is not farm property. It is for sale in lots 25 by 140 feet. Eighteen such lots and two half lots have been sold in those two blocks. Eighteen out of the 24 lots in the west half of the adjoining blocks 42 and 56 have also been sold. The location of the sur-

rounding lots and their sale price are highly significant and bear a direct relation to the value of plaintiff's property and the severance damages that would result from taking a strip 42 feet wide adjoining the highway. The property north of the Kaul lots is suitable for division into building or possibly business lots. The evidence is clear that it is the most desirable of all plaintiff's property along the highway. It is comparatively high ground and closest to Nebraska Street and the built-up portion of the City of Ashley, and lies between property that has already been developed and the highway. It is obviously much more valuable than plaintiff's property farther to the south. The plan followed in making the sales in this area also has a direct bearing upon severance damages. The taking of 42 feet next to the highway leaves a strip of land only 98 feet wide from the highway to the proposed alley. Lots when sold will have a depth of 98 feet instead of 140. We have reached the conclusion that the plaintiff's property in blocks 41 and 57 must be treated as a separate parcel or tract in determining the damages arising from both taking and severance. It is clearly established that the value of this property should be determined upon the basis of division and sale in lots 25 feet by 140 feet, and that the value is $150.00 per lot including the Kaul lots. Each block contains 12 such lots. On the basis of that value, the 42 feet taken from the west end of each lot is worth $45.00, or $1080.00 for the property taken from the 24 lots in these two blocks.

We next come to the determination and computation of the severance damages to the lots in blocks 41 and 57. The reduction in the length of these lots from 140 feet to 98 feet makes the remainder less saleable and reduces the value of the lots in a substantial sum in addition to the value of the property actually taken, according to the testimony of several witnesses, as well as reasonable deductions from established facts. For determining the amount of severance damages to these lots, we must rely largely upon our own deductions. Witnesses were not permitted with one exception, to testify to either the value of the property taken or severance damages on the basis of individual lots. The plaintiff's secretary testified that the severance

damages to plaintiff's entire tract was $2,000.00. The defendants contend that no severance damages have resulted from the taking. The lots in blocks 41 and 57 are shortened from 140 to 98 feet, obviously some severance damage resulted. This we deem to be $20.00 a lot or a total of $480.00. In making this computation we have not overlooked the fact that the plaintiff owns only the west half of the two lots on the corner of the highway and Nebraska Street.

We now turn our attention to the property lying south of the Kaul lots, which extends a distance of 1100 feet to the section line or city limits. This strip of land is clearly a part of the original 40 acre tract and has nothing to distinguish it either in use or adaptability from the rest of that tract. It differs in many respects from that portion of the land taken that lies in blocks 41 and 57, which we have heretofore considered as a separate tract. Going southward from the Kaul lots, the land slopes into a depression some 300 feet wide, then rises again as it approaches the section line and corporate limits. Its contour indicates that it is less desirable for either residential or commercial use than are the Kaul lots and the land lying between them and Nebraska Street. It is also farther from the built-up portion of the City of Ashley. Most significant is the fact that there have been no sales or development whatever south of the Kaul lots. The plaintiff contends that it intends to plat, subdivide, and sell in lots the entire 40 acre tract. But the circumstances indicate that such development is not probable in the near future. The plaintiff's evidence with respect to the value of this property is all based upon prospective sales in lots or tracts 25 by 140 feet. And any value that it may have over and above that of pasture or farm land must be based upon that possibility.

"One claiming damages on account of the appropriation of property through condemnation proceedings has the burden of establishing the amount that he is entitled to recover therefor." Otter Tail Power Co. v. Von Bank, 72 ND 497, 8 NW2d 599, 145 ALR 1343; City of Bismarck v. Casey, ante 295, 43 NW2d 372.

In determining the value of land taken by eminent domain, it

is proper to consider the adaptation of the land for purposes other than those to which it is put at the time of taking. But this does not mean that the owner is entitled to base value or damages on remote, speculative, uncertain or merely possible uses. Montana Eastern Railway Co. v. Lebeck, 32 ND 162, 155 NW 648. The ultimate object to be determined is the present market value of the property taken. Where it is contended that the land is suitable for subdivision purposes, it must be shown that this suitability affects the present market value. Or, as stated in People v. McReynolds, 31 Cal App2d 219, 87 Pac2d 734:

"The uses to which the property may be adapted must, however, be so reasonably probable as to have an effect upon the present market value of the land."

Herein lies the difference between that portion of the property sought to be condemned in this case that lies in blocks 41 and 57 and that which lies farther to the south. The sales which have been made and which almost surround the former portion indicate the value of the surrounding lots and a strong probability that the other lots in those blocks will be sold for at least as much. No such probability prevails with the land lying farther to the south.

The acreage value of the 40 acre tract as pasture or farm land was fixed by a number of witnesses at from $50.00 to $60.00 per acre. The trial court apparently considered that there was some possibility that it could be divided into lots and sold, for he found that the "tract has some value for subdivision purposes" and valued it at $100.00 per acre.

From all the evidence adduced, we are satisfied that the land lying south of the Kaul lots is at the present time pasture or farm land; that the value for its present use is from $50.00 to $60.00 per acre; that there is a possibility that it may be subdivided and eventually sold in lots; but that possibility is so remote as to have no great effect on the present market value; that the value of $100.00 per acre determined by the trial court is the reasonable value of this portion of the land taken for highway purposes.

The tract lying south of the Kaul lots appears to have suffered

no severance damages by reason of the taking of the 42 foot strip for highway purposes. When the land is considered in the light of its present use, that portion not taken has not been damaged. The possibility of it being subdivided and sold as lots does not entitle the plaintiff to severance damages for two reasons—the first is the remoteness of that possibility, and the second is that no pattern for lots, streets, or alleys has been set as a result of any sale of this tract. Plaintiff argues that if it is subdivided the streets and alleys should be continuations of the present streets and alleys of the City of Ashley. But we see no merit in this contention. Should the tract be subdivided, streets, alleys, and the size of the lots will be dictated by convenience and adaptability to the tract subdivided. It is completely segregated from the City of Ashley by the railroad on the east and is bounded on the south and west by the corporate limits. Only two streets could be extended into this tract from the north. It does not appear necessary that those streets should be extended into a new subdivision by the exact extension of their present lines. We see no possibility of appreciable damage resulting from this situation.

The trial court allowed the plaintiff $19.48 as the cost of the removal of a fence when the highway was extended. The justness of this allowance is not questioned.

We summarize plaintiff's damages as follows:

| | |
|---|---:|
| Property taken in blocks 41 and 57 | $1080.00 |
| Severance damages to property in blocks 41 and 57 | 480.00 |
| Value of the property taken south of the Kaul lots | 106.00 |
| Costs of fence removal | 19.48 |
| Amount plaintiff is entitled to recover | $1685.48 |

The district court is therefore directed to vacate its former judgment and enter a new judgment conformable to this opinion.

NUESSLE, C. J., CHRISTIANSON, GRIMSON and BURKE, concur.