CITY OF HAZELTON, a Municipal Corporation, Plaintiff and Appellee,

v.

Doris D. DAUGHERTY, as Administratrix of the Estate of Anita P. Daugherty, Defendant and Appellant.

Civ. No. 9485.

Supreme Court of North Dakota.

Feb. 1, 1979.

Rehearing Denied March 1, 1979.

Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee; argued by Malcolm H. Brown, Mandan.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Daniel J. Chapman, Bismarck.

SAND, Justice.

Doris D. Daugherty appealed from a judgment of the Third Judicial District Court, Emmons County, based on a jury verdict, awarding her $2,250 for the condemnation of three lots to be used by the City of Hazelton for a combination fire hall and fire protection building. On appeal, Daugherty challenged the sufficiency of the jury award and the validity of the condemnation. We affirm.

Daugherty owned Lots 9, 10, 11, and 12, Block 7, Original Townsite of Hazelton, North Dakota. Each of the lots front Main Street of Hazelton and are 25 feet wide and 140 feet long. Lot 12 is a corner lot of Block 7 located in the central business district of Hazelton. A house was located on lot 9 but lots 10, 11, and 12 were vacant at the commencement of the condemnation action. The house was vacant at the time of trial and had very little market value although Daugherty testified she planned to use it as her residence on retirement.

The City of Hazelton initially sought to condemn all four lots for purposes of constructing a combined city hall and fire protection building. A jury trial on the action was set for 8 December 1977, but prior to that date counsel for Daugherty made, and was granted, a motion to withdraw. Because of the additional time needed by Daugherty's new counsel to adequately prepare for trial, and the necessity of the City of Hazelton to secure possession of the lots prior to 30 December 1977 or risk the loss of a grant from the Economic Development Administration to construct the building, a stipulation was entered into by the parties allowing the city to take possession of three of the four lots and reserving the issue of compensation for a later date. Thus under the terms of the stipulation Hazelton was given immediate possession of lots 10, 11, and 12 and agreed it would not seek condemnation of lot 9. The stipulation also provided Daugherty would not contest the necessity of the condemnation of lots 10, 11, and 12.

A jury trial was held on the issue of compensation on 16 January 1978, and on the same day the jury returned a verdict awarding $2,250 to Daugherty for the taking of the three lots and nothing for severance damages to the remaining lot. Judgment was entered in accordance with the verdict from which Daugherty appealed.

Our review of questions of fact tried to a jury is limited to determining if there is substantial evidence to support the verdict. Evidence is viewed in the light most favorable to the verdict and it is only when reasonable men can reach but one conclusion upon review of the issues that the evidence becomes a question of law for this court. *Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D.1978). Thus, unless the verdict is so flagrantly against the weight of the evidence that it appears that the jury was actuated by bias or prejudice, the verdict will not be set aside. *Northern States Power Co. v. Effertz,* 94 N.W.2d 288 (N.D. 1958).

Daugherty challenged the sufficiency of the jury award on two counts. The first concerned the amount granted for the taking of the three lots; the second related to severance damages. In support of her argument that the award was inadequate, Daugherty pointed out the jury award barely exceeded the amount she paid in special assessments on the property. At trial, Daugherty testified that from the years 1955 to 1971 she paid a total of $2,197 in special assessments for water and sewer improvements to the four lots. She asserted this evidence alone demonstrates the compensation awarded by the jury was insufficient.

Section 14 of the North Dakota Constitution provides private property shall not be taken or damaged for public use without just compensation being made to the owner. Section 32–15–22 of the North Dakota Century Code defines the forms of compensation to be awarded in an eminent domain action. It states, in pertinent part:

"The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. . . .

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.

3. If the property, though no part thereof is. taken, will be damaged by the construction of the proposed improvement, the amount of such damages."

Although not necessarily an absolute or exclusive standard or method, the general rule for determining the value of property taken under subsection (1) of § 32–15–22, NDCC, is a consideration of the fair market value of such property. *Little v. Burleigh County,* 82 N.W.2d 603 (N.D. 1957); *City of Bismarck v. Casey,* 77 N.D. 295, 43 N.W.2d 372 (1950). This court has defined fair market value in condemnation cases as the highest price property can be sold for in the open market by a willing seller to a willing purchaser, neither acting under compulsion and both exercising reasonable judgment. *Little v. Burleigh County, supra.*

This court has also said that one claiming damages on account of the appropriation of property through condemnation proceedings occupies a position much like a plaintiff in any other action for recovery of damages and as such has the burden of proof in establishing the amount of damages he is entitled to. *Wishek Investment Co. v. McIntosh County,* 77 N.D. 685, 45 N.W.2d 417 (1950); *City of Bismarck v. Casey, supra.*

Ordinarily, an award in a condemnation case will be sustained if it is within the limits of the damages testified to by the witnesses. *State v. Livingston,* 270 N.W.2d 556 (N.D.1978); *Northern States Power Co. v. Effertz, supra; City of Bismarck v. Casey, supra.*

At trial, Eugene D. Weekes, a real estate broker and appraiser, testified as an expert witness on behalf of Daugherty. Weekes

stated the fair market value of lots 10, 11, and 12 was $3,000. When Daugherty was questioned on direct examination as to what she felt the value of the property was, she replied she would leave the determination of value to her appraiser because she was not qualified to make an estimate. An appraiser for the City of Hazelton, Ervin E. Mund, testified the lots were each worth $500, or a total of $1,500 was the fair market value for the three lots taken.

The jury awarded Daugherty $2,250 for the three lots, a value well within the testimony of the two expert witnesses. Although Daugherty testified as to the cost of special improvements, some of which were made over 20 years earlier, she did not argue the cost of such assessments indicated the fair market value of the property or that they were a better measure of the value of the property taken than the fair market value as testified to by the appraisers.

■ Because improvements permanently affixed to land taken by eminent domain are usually regarded as part of the realty, their value is generally considered in connection with the realty. The original cost of such improvements usually does not constitute a proper measure of their value in determining the compensation which the owner is entitled for his realty, because improvements and repairs do not automatically augment the value of the realty to the same amount in dollars as the owner paid for them, especially when they were made a substantial length of time before the taking. *Lindsay v. Housing Authority of City of Milwaukee,* 18 Wis.2d 624, 119 N.W.2d 357 (1963); 29A C.J.S. *Eminent Domain* § 175(1)(a).

■ We conclude the jury verdict awarding Daugherty $2,250 for the taking of the three lots was supported by substantial evidence in the record.

The second ground on which Daugherty challenged the sufficiency of the jury verdict was that it failed to award her compensation for severance damages to the lot which was not taken.

Subsection (2) of § 32–15–22, NDCC, provides for severance damages, that is, the depreciation in the value of the remainder of a parcel caused by the severance of the remainder from the part taken. Daugherty argued that it is manifestly clear that lot 9, which was not taken by the City of Hazelton, suffered severance damages as a result of the condemnation of the adjoining lots 10, 11, and 12.

Weekes testified that the market value of lot 9 would be lowered by $500 as a result of the taking because it could no longer be sold with the three adjoining lots as a contiguous tract of land.

Mund testified lot 9 would suffer no severance damages as a result of the taking of lots 10, 11, and 12. As a reason for his opinion Mund stated there were other vacant lots in the city of the same size as lot 9 selling anywhere from $25 to $500. He stated that because he had established each of the lots were worth $500 there was no damage to the lot severed, implying the lots were worth a maximum of the $500 whether sold separately or as part of a bloc.

■ There is no sole measure for determining severance damages as such damages are not susceptible to precise proof and can only be approximately shown by the opinion of witnesses having the requisite information. *Minnkota Power Cooperative v. Bacon,* 72 N.W.2d 880 (N.D.1955); *Lineburg v. Sandven,* 74 N.D. 364, 21 N.W.2d 808 (1946). The generally accepted best measure of severance damages, however, is the diminution or depreciation of the market value of the property not condemned, which is the difference in the market value of the property not taken before and after the severance from the part taken. 29A C.J.S. *Eminent Domain* § 139. Damage to the remainder will not be presumed, and if the landowner fails to show by competent evidence that the value of the remainder has been diminished by the taking, compensation will be limited to the value of the land actually taken, as there cannot be any damage where there is no pecuniary loss. *City of Bismarck v. Casey, supra* ; 27 Am.Jur.2d *Eminent Domain*

§ 419. If the property owner wants more than the evidence of condemnor indicates the fair market value to be, he must introduce evidence of value more convincing to the jury than that offered by the condemnor and it is always open to the condemnor to show that special damages will not occur. *State v. Amunsis,* 61 Wash.2d 160, 377 P.2d 462 (1963); 27 Am.Jur.2d *Eminent Domain* § 419.

 Lot 9 contained a house and was not being used for the same purposes as the adjoining three lots, which were vacant. Although a lack of unity of purpose does not necessarily indicate the absence of severance damages, it is an important consideration. The adaptation of the land for purposes other than those to which it is put at the time of taking may be considered in the award of severance damages, however, this does not mean the owner is entitled to base value for damages on remote, speculative, uncertain, or merely possible uses. The ultimate object to be determined is the present market value of the property taken or damaged. *Wishek Investment Co. v. McIntosh County, supra.*

 The jury award for severance damages in this case was the same amount as that testified to by the appraiser for the City of Hazelton. The award is supported by substantial evidence and is not flagrantly against the weight of the evidence. Daugherty failed to meet her burden of proving that the market value of lot 9 was diminished as a result of the taking of the adjoining three lots.

 Daugherty, in her brief, argued there were severance damages to lot 9 because the house on the lot would be less desirable. She pointed out the house would be sandwiched between commercial buildings, one which would be a fire hall with sirens and trucks disrupting the serenity of the house owner. These factors, or disruptions, however, result from the use to which the taken property will be put and as such are considerations in determining consequential damages and not severance damages. Daugherty offered no evidence of these consequential damages at trial or that the value of her property was diminished as a result thereof. She based her theory of damages to lot 9 on the grounds of the severance from the adjoining lots and the opinion of an appraiser that the property had suffered a loss in fair market value because it could no longer be sold as a unit with the other three lots. That the jury chose not to accept her theory but placed greater credibility on the testimony of her adversary's witness, does not entitle her to change her theory of damages or present additional evidence on appeal. Where a certain theory as to the measure of damages or the amount of recovery is accepted or acted upon by the parties in the trial court as the proper one it must be adhered to in the appellate court, whether it is correct or not. *Coverston v. Egeland,* 69 N.W.2d 790 (N.D.1955).

As a final basis for her appeal, Daugherty challenged the validity of the taking of her property. She argued that the stipulation she entered into went only to the "necessity" of the taking and does not affect her right to challenge, and the city's burden of proving "validity." Daugherty questioned the power of the City of Hazelton to unite with a rural fire protection district and condemn property for the construction of a building to house primarily fire protection district equipment. Because we conclude Daugherty has waived her right to challenge the power of the city to take the property, we need not reach the issue of whether or not the city had power to contract with the fire protection district.[1]

 Daugherty was represented by at least three different counsel during the course of this action. Different counsel, however, does not entitle a litigant, on appeal, to raise issues which he waived or did not raise at trial. We discussed this situation in *Mattis v. Mattis,* 274 N.W.2d 201

---

1. Chapter 54–40, NDCC, in effect authorizes one or more governmental units to do jointly what each may do individually.

(N.D.1979) where we quoted from our earlier opinion of *Rummel v. Rummel*, 265 N.W.2d 230, 232 (N.D.1978):

" '. . . in the absence of unusual circumstances, new counsel on appeal is limited to the same issues that prior counsel would have been able to raise. Merely becoming a successor to prior counsel does not give him the right to raise issues on appeal which prior counsel could not have raised. The issues and positions of the respective parties remain the same.

" ' "It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy." *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D. 1975); *Welken v. Conley*, 252 N.W.2d 311, 317 (N.D.1976).'

"To this we add that ordinarily on appeals to this court the record must reflect that the appellant brought all matters necessary for the disposition of the issues raised on appeal before the trial court or that they were improperly excluded by the court; and that all issues raised on appeal were presented to the trial court but were not resolved in accordance with law. The appeal process is designed to review action taken by the trial court. It is not designed to give the appellant an opportunity to develop different strategy or theories. The appellant is bound by the record he made."

In this case Daugherty signed a stipulation which included the following statement:

"C. The Defendant will not contest the necessity of Plaintiff's condemnation of Lots Ten (10), Eleven (11), and Twelve (12), Block Seven (7), Original Town of Hazelton;"

Daugherty argued the above paragraph does not eliminate of City of Hazelton's requirement of proving the validity of the taking. This argument ignores two other paragraphs of the stipulation signed by Daugherty:

"D. That Plaintiff is entitled to and is to have immediate possession of Lots Ten (10), Eleven (11), and Twelve (12), Block Seven (7), Original Town of Hazelton and may commence construction thereon;

"E. That the only issue to be resolved between the Plaintiff and Defendant herein is that of just compensation for the taking of Defendant's property and that that issue be reserved until a later date to be set by the above named Court, which will allow Defendant sufficient time within which to prepare for trial of said issue."

Both parties tried the case solely on the issue of damages. The trial court in its judgment treated the question of necessity and authority as having been stipulated to. Only now on appeal does Daugherty seek to challenge the authority of the condemnor.

■ The stipulation is clear that the only issue between the parties to be tried was the question of damages. Although the stipulation does not contain a specific agreement as to the "validity" or authority of the taking, where condemnee acquiesces in a proceeding leading to the award of compensation, he is deemed to have waived both the necessity of the taking and the authority of the condemnor. *Adams v. Housing Authority of City of Atlanta*, 171 Ga.App. 646, 161 S.E.2d 444 (1968); Nichols on Eminent Domain, § 26.731[2], page 26–545.

■ We conclude Daugherty, through the stipulation signed by her, and her conduct at trial, waived her right to challenge the authority of the City of Hazelton to condemn her property.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.