### 12720

CHARLESTON & WESTERN CAROLINA RY. CO. v. SPARTAN-BURG BONDED WAREHOUSE, INC.

(149 S. E., 236)

*Messrs. Perrin & Tinsley,* for appellant,

*Messrs. Park & McDonald,* and *Nicholls, Wyche & Byrnes,* for respondent,

August 16, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The facts of this case and the legal questions involved are so clearly set forth in the opinion of the Chief Justice that it would be useless repetition for me to restate them. I adopt them in expressing my views.

I concur with the Chief Justice in sustaining exception 3. The case of *Wateree Power Co. v. Rion,* 113 S. C., 303, 102 S. E., 331, has established in this State the rule, to which I am willing to adhere, that in

a proceeding to condemn lands, where the only sales within recent years have been to the condemnor, the landowner has the right to show the price paid by the condemnor for similar lands in the same general neighborhood. Like all general rules of evidence, its application should be left largely to the sound discretion of the trial Judge, but in this case it seems to me that the landowner brought himself clearly within the rule.

From the nature of things, there cannot be two tracts of land which are identical, and of necessity there are differences between any tracts. It appears from the record in this case that the Alexander tract and the tract being condemned are contiguous, and that both tracts are undeveloped city property. At least one witness (Mr. Ward) testified that the Alexander property was not as valuable as the property of the appellant. I have been unable to gather from the record many of the differences in the two tracts stressed by the attorneys for the respondent in their printed argument and referred to by Mr. Justice Cothran. These differences could have been pointed out by the respondent during the trial, and, had the Trial Judge thought it necessary, the jury could have viewed the Alexander property while viewing the property involved in this case.

With reference to exception 4, I agree with Mr. Justice Cothran that there does not appear in the record a basis for this exception. However, inasmuch as the case will have to go back for a new trial, I think the question should be decided.

Mr. Floyd, a witness for the condemnor, testified on direct examination that he was on a committee from the Chamber of Commerce of the city of Spartanburg that appraised the tract involved in this case and other tracts, and gave his individual opinion of the value of the tract in question. Under these circumstances, I think it was proper for the landowner, on cross examination, to show that the appraisals of this committee had not been accepted

by the landowners. The fact that this witness was on that committee must have conveyed to the jury that his opinion reflected the findings of the committee, for it could not have served any other purpose. I therefore think that the landowner had the right to discredit the findings of that committee in any proper way.

I agree with Mr. Justice Cothran in the disposition of the other exceptions.

A majority of the Court agreeing with the views stated herein, this opinion becomes the opinion of the Court; and the judgment of this Court is that the first, second, fourth, and fifth exceptions are overruled; the third exception is sustained; and the judgment below is reversed, and the cause remanded for a new trial.

Messrs. Justices Stabler and Carter concur.

Mr. Chief Justice Watts (concurring in result) : This was a proceeding by the Charleston & Western Carolina railway Company to condemn the strip of land through the lands of the landowner, appellant, 237.2 feet by 55.7 feet by 185 feet by 71.2 feet, containing 26/100 of an acre, on the Greenville branch in the city of Spartanburg, commenced by the service of the usual notice upon the landowner on July 18, 1925.

In due time the appellant notified the railway company that it would not consent to the entry upon its land without previous and just compensation. A condemnation jury was impaneled, in accordance with the requirements of the statute, who awarded the appellant $900.00 as compensation and damages for the proposed right of way; the verdict being indorsed on the original notice served by the respondent on the landowner at the commencement of the proceeding. Both appellant and respondent appealed to the Court of Common Pleas from the award of the condemnation jury, and the appeal came on for a hearing before Hon. Halcott P. Green, Special Judge presiding, and a jury at the following October term of Court of Common Pleas for Spartan-

burg County, and the jury awarded the landowner $1000.00 as compensation and damages. Notice of motion for a new trial was made by the appellant, and on May 11, 1926, the presiding Judge filed an order refusing the motion for a new trial on all grounds. In due time appellant served notice of appeal from the judgment rendered and from the order refusing a new trial.

Both juries viewed the premises before making awards.

There are five exceptions, as follows:

"1. That his Honor erred as a matter of law in refusing a motion for a new trial, the error being that he submitted to the jury the original notice in this proceeding on which was endorsed the amount found by the Clerk's jury, from which an appeal had been taken.

"2. That his Honor erred in refusing a motion for a new trial, the error being that to permit the verdict of the jury to stand would amount to confiscation of the land of the landowner inasmuch as the undisputed testimony of the landowner was that it had paid for this property at least the sum of one hundred ($100.00) dollars a front foot, leaving out of consideration the value of the building located on the property.

"3. That his Honor erred as a matter of law in refusing to allow the introduction by the landowner of the deed of Mrs. Hattie B. Alexander to the C. & W. C. Railway Company, recorded in the office of R. M. C. for Spartanburg County, in Deed Book 6-z, page 382, the error being that in a proceeding to condemn lands, where the only sales in recent years had been to the condemnor, landowners should be allowed to show the amount paid by the company for other similar lands in the same general neighborhood.

"4. That his Honor erred in refusing to allow the landowner to prove by the witness, J. F. Floyd, that in no event had any of the landowners from who the railway had secured property accepted the appraisal fixed on their respective lands by the alleged Chamber of Commerce committee,

the error being that the railroad had proved by these witnesses that they were members of the committee appointed by the Chamber of Commerce to appraise the lands acquired by the railway company for its construction, and that as a result of their examination of the property in question, they were of the opinion that the property was worth the amount they testified to.

"5. That the argument of counsel for the respondent railway company in regard to the testimony of P. E. Brown, in which argument he stated that the said testimony gave the amount assessed by the former jury, was highly prejudicial to the landowner, and must have had considerable weight with the jury in arriving at their verdict."

Exceptions 1 and 2 should be overruled. While it was error under *Wateree Power Co. v. Rion,* 113 S. C., 303, 102 S. E., 331, yet it was harmless in view of what the judge told the jury in his charge. Exceptions 3 and 4 should be sustained under *Wateree Power Co. v. Rion, supra.* I think it is unnecessary to consider exception 5.

The judgment should be reversed and new trial granted.

MR. JUSTICE COTHRAN (dissenting) : A very clear statement of the nature of the controversy and of the proceedings had appears in the opinion of the Chief Justice, which I need not repeat or attempt to improve.

I. The first exception complains of error in submitting to the jury the original notice in the condemnation proceedings upon which was indorsed the verdict of the clerk's jury.

The notice, the refusal of the landowner, the order of the judge directing the condemnation issue, the verdict of the jury, the notice of a trial *de novo* in the Circuit Court; all constituted the record, which informed the Court and jury of the nature of the proceeding and the land required fully described. It was all that they had to go upon in the trial; and very properly was submitted to the Court and by the Court to the jury. The fact that there was indorsed upon the notice the verdict of the Clerk's jury was no more than

what invariably happens when a verdict is set aside and a new trial is ordered. It appears that the presiding Judge carefully admonished the jury that they should not be influenced by that verdict.

In the case of *Wateree Power Co. v. Rion*, 113 S. C., 303 102 S. E., 331, relied upon by the appellant, and which the learned Chief Justice declares is authority for holding such submission error (though cured by the instructions of the judge), the situation was quite different. There the landowners claimed *as a right* the privilege of reading to the jury trying the issue *de novo* the verdict of the condemnation jury. The Court held that they did not have that right, as its exercise would naturally influence the jury, which was manifestly what was intended. I do not think, therefore, that the *Rion case* supports the charge of error in the present case; it was not an error that needed to be cured by the judge's instructions. The danger in the holding of the Chief Justice is that a case might arise where the record went to the jury with the indorsement of the condemnation jury upon it, and without the very proper instructions which the presiding Judge gave.

II. The second exception attacks the sufficiency of the amount allowed by the jury. That was an issue of fact, fairly submitted to the jury and approved by the judge. Unless the refusal to grant a new trial was based upon an error of law, which was not the case here, the refusal is not a legitimate ground of appeal. *Walker v. Quinn*, 134 S. C., 510, 133 S. E., 444.

III. The third exception complains of error in not allowing the introduction of a deed from Mrs. Alexander to the railway company, dated April 25, 1925, conveying property adjoining the property being condemned for a consideration of $8,000.00, as evidence bearing upon the value of the property of the landowner sought to be condemned.

The railway company objected to the evidence, and counsel urge that the objection was properly sustained upon

the grounds that the land acquired from Mrs. Alexander was not similar to that of the landowner in question; that it was not of the same general nature; that the quantity was different; that the accessibility of the two parcels was entirely different; that there was no necessity for such evidence; that the landowner had ten or twelve witnesses to testify that the land was worth from $8,000 to $18,000, which was considerably more than the railway company paid for a fee-simple general warranty deed for a greater amount of land than that required of the landowner; that the witnesses who testified for the landowner based their opinion upon the value of the land in that vicinity and upon quite a number of sales that had been made in the neighborhood of the landowner's property to persons other than the railway company.

The counsel for the appellant relied upon the case of *Wateree Power Co. v. Rion,* 113 S. C., 303, 102 S. E., 331, 332, to sustain the admissibility of the proposed evidence. That must depend upon a favorable comparison of the facts and reasoning of the Court in that case with the facts in the present controversy.

It appeared that in the *Wateree Power Co. case* that the company had been buying lands in that vicinity for over ten years, and that there were no other purchases during that time. The exception of the landowner in that case was "in refusing to admit evidence of the amount paid by the petitioner herein, at dates reasonably near, for lands of the same general nature and in the same neighborhood as the lands here in question, whereby the respondents were prejudiced in being denied the right to show, by the only testimony available, what was the market value of lands in their immediate vicinity; the petitioner having been effectually the only purchaser of the land in the neighborhood since 1909, when its right to develop its water power and to condemn lands was granted."

The Court in considering this exception said:

"Since 1909, when respondent procured the right to develop property in this vicinity no sales of real estate have been made, except sales to the respondent. For over ten years the respondent has purchased lands, there being no other purchasers as far as the evidence shows, as the evidence of Elliott, excluded by his Honor, was competent and should have been received as tending to show the value of lands of the same general neighborhood and of the same general nature, and the amount paid within a year of the condemnation proceeding.

"The appellants had the right of showing the valuation placed by the respondent upon similar lands in the same general neighborhood, and it was competent to show by Elliott what the respondent had paid him for his land under the showing made, etc."

The facts in the present case present very different situations. The appellant landowner produced no testimony to show that the land included in the deed offered in evidence was in the general neighborhood and of the same general nature. It is true that the land in question is in the same general neighborhood, but it is not of the same general nature. The Alexander land has a frontage on Pawpaw street of 153 feet; appellant's land fronts on no street. The Alexander land has a frontage on Warehouse alley of 203.8 feet. Warehouse alley runs into the warehouse property, but stops there. The Alexander lot has in front of it a 28-foot street leading into West Main street; appellant's property has no direct outlet to West Main street. The Alexander property is accessible from three different streets; appellant's property is inaccessible from any public street. The amount of property purchased from Mrs. Alexander was three or four times as much as that required by the railway company from the appellant. The railway company obtained from Mrs. Alexander a fee-simple general warranty title. All that could be acquired in the condemnation proceedings from appellant is an easement through the appel-

lant's property for railroad purposes. The property purchased from Mrs. Alexander leaves the remainder of her property in a long narrow triangular shaped tract, and practically destroys the remainder, leaving it almost useless for any purpose, the whole tract being five or six times as large as that required from appellant; whereas the land of appellant required by the railway company is on the back end of a 2½-acre tract of land, the taking of which causes no damage whatsoever to the remainder of the tract; the railway company condemning the least valuable part of the whole tract and leaving the other undamaged. If benefits could be considered, the building of the railway tracks through appellant's land would increase the value of the remainder of its tract of 2½ acres. The appellant's property, therefore, is in no way similar to that purchased from Mrs. Alexander in either location, value, frontage, accessibility, amount, or damage to the remaining lands.

Even if the *Wateree Company case* should be considered applicable, it is held in the case of *Miller v. Power Co.*, 104 S. C., 129, 88 S. E., 374, 375, 376:

"But the refusal of the Court to admit the testimony need not work a reversal of the judgment unless the defendant has been prejudiced by the exclusion. That principle of law is too well established to render necessary the citation of authority."

It is impossible to conceive how the landowner's case was prejudiced by the failure of the Court to admit this evidence. The Court further held in the *Miller case*:

"So that the jury had the benefit of testimony as to the value of other land than the land in issue, and that is all the witness J. W. Miller could have sworn to."

In addition to this, I think that the decision in the *Wateree Company case*, while doubtless correct, is an exception to the universally accepted rule that the "evidence of the price paid by a condemnor for other property to be used in the same enterprise is not generally regarded as admissible to prove the value of the land condemned." 10 R. C. L., 220.

The rule, as I understand it, and which I think is entirely reasonable, is that, in determining the value of the property sought to be condemned, evidence of other transfers of similar land in practically the same area is confined to voluntary sales, where the owner is not obliged to sell and the buyer is not obliged to buy, and even in such cases there must exist an apparent necessity for the resort to such evidence. A purchase in anticipation of, or as a substitute for, condemnation, I do not think can be considered a voluntary sale and purchase.

In 2 Lewis, Eminent Domain (3d Ed.), § 667, it is said:

"What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property"— citing an array of authorities.

In 2 Nichols, Eminent Domain (2d Ed.), § 456, it is said:

"For the same reason it is not competent for either party to put in evidence the amount paid by the condemning party to the owners of neighboring lands taken at the same time, and as part of the same proceedings, however similar they may be to that in controversy, whether the payment was made as the result of a voluntary settlement, an award, or the verdict of a jury. * * * And it would be equally unwise, unjust and impolitic to make it impossible for a corporation which has taken land by eminent domain to compromise the claims of one owner without furnishing evidence against itself in the cases of all others who had similar claims. If a sale is made to a corporation about to institute

condemnation 'proceedings if it cannot acquire the land by purchase at a satisfactory price, the price paid is not a fair test of market value."

It is the general rule that evidence of what the condemning party has paid for other land by private treaty is not admissible whether the lands are similar or not. *U. S. v. Freeman* (D. C.), 113 F., 370. See, also, numerous cases in Decennial Digests, under title Evidence, 142.

IV. In the fourth exception the appellant complains of the exclusion of the testimony of the witness Floyd that in no case had the landowners accepted the appraisal fixed by the Chamber of Commerce committee for their lands.

I have gone over the testimony of the witness carefully three times, and I do not find any effort on the part of counsel for the appellant to elicit testimony of this character from the witness. He testified on direct examination by counsel for the railway company that he acted upon the committee of the Chamber of Commerce in appraising certain properties sought to be acquired by the railway company, and upon cross-examination by counsel for the landowner, this is all that I find concerning the matter:

"Q. Mr. Floyd, since my friend has gone into this Chamber of Commerce business, I would like to know if you were on the Chamber of Commerce committee that appraised the H. L. Bomar property across the street?

"A. That was settled outside.

"Mr. Wyche: I object to that.

"The Court: I don't think that is objectionable if he don't go any further, and say what it was settled for.

"Mr. Perrin (resuming) : Q. You appraised that property of Bomar across the street on West Main street? A. Yes, sir; believe I did.

"Q. What, in your opinion, was the value of that practicular piece of property?

"Mr. Wyche: I object to that, your Honor.

"Court: I don't see that would be competent unless it could be shown exactly similar to this property. That is my

understanding of the matter. While it is true it was appraised with all the members there that was the occasion of his visiting that property there. But the point was this: That is the only question asked him—was what his individual estimation of the property was. I think it will open up too broad a channel to open up things not having a particular bearing on this.

"Mr. Perrin (resuming his examination): Q. You appraised individually and as a committee the Ida Alexander property immediately adjacent to this? A. Yes, sir.

"Q. I am going to ask you what you actually thought it was worth, individually, on your visit to this property?

"Mr. Wyche: I object.

"Court: I don't see how that would have any bearing as a basis here.

"Q. Mr. Floyd, look at that map whether or not the Alexander property is shown on there?

"Mr. Wyche: I object to going into the Alexander property. She sold us her property; we paid her; we didn't have to condemn her.

"Court: I think to go into that would extend this investigation too far. I don't think it is proper to let that investigation go any further than it has gone.

"Mr. Perrin: Just note our exception to the ruling."

I do not think, therefore, that there is established any basis for the exception.

V. The fifth exception complains of certain remarks made by counsel for the railway company in addressing the jury, to the effect that the witness P. E. Brown in his testimony had given the amount assessed by the condemnation jury.

The transcript of record does not show, as a fact, what the remarks of counsel were. All that appears is the following colloquy and the ruling of the Court:

"Mr. Perrin: I object, may it please the Court, to the remarks of Mr. Wyche in his argument to the jury, that the

witness Brown on the stand testified as to what the jury in the original proceeding gave.

"Mr. Wyche: May it please your Honor, what I stated to the jury was this: That Brown, in response to a question brought out by Mr. Perrin, testified what the other jury gave. I further stated that that has nothing to do with your verdict, if you think the verdict should be less than the amount the other jury gave, it would be your duty to find such a verdict. If you find and think the verdict the other jury gave was too small, then it would be your duty to find a larger verdict. This is a trial *de novo,* to be tried by you, and find your verdict accordingly, the other verdict should have no influence on you whatsoever.

"Court: I see no objection to his remark."

The explanation of Mr. Wyche appears to have been entirely satisfactory.

I find no error in the record, and think that the judgment of the Circuit Court should be affirmed.