ELLA COYKENDALL, Appellant, v. PEARL BRIGGS, et al. PEARL BRIGGS, Respondent.

(234 N. W. 74.)

Opinion filed January 2, 1931.

*H. W. Swenson,* for appellant.

*W. M. Anderson* and *F. T. Cuthbert,* for respondent.

BURR, J. This is an action to determine adverse claims to 80 acres of land in Ramsey county, and apparently is suggested by the outcome of the case of Briggs v. Coykendall, reported in 224 N. W. 202, where many of the facts are set forth.

Both parties claim title from the same source. Originally the land belonged to one Fred Coykendall, father of Harry and of Pearl Briggs and brother of the plaintiff and of Frank Coykendall. Just before this controversy started, one Harry Coykendall owned the land in question. December 30, 1926, he deeded the land to Pearl Briggs his sister; but owing to her inability to raise money to pay the taxes she did not record her deed until July 15, 1927. On the 5th of July, 1927, the same Harry Coykendall gave a deed to this land to his aunt Ella Coykendall, the plaintiff, and the plaintiff's deed was recorded July 7, 1927.

As stated by the appellant, the sole issue is: "Did plaintiff before she secured her deed on July 5, 1927, have knowledge, either actual or constructive of defendant's deed or claim to title to the real estate involved in this lawsuit?"

The trial court found, as the facts in the case: that on October 24, 1925, "Pearl Briggs entered into a contract for the purchase of such premises from the said Harry Coykendall a brother" and paid part of the purchase price; "that such negotiations were largely held in the home of the plaintiff . . . that the plaintiff had actual knowledge of such purchase by the defendant . . . and that the plaintiff by reason of various conversations and business transactions, and subsequent to the date of purchase had further actual knowledge and notice of the purchase by the defendant Pearl Briggs, of such described premises;" that Pearl Briggs immediately took possession of the premises, leased them to one Joe Schwan and "has at all times been in open, notorious possession of said premises since her purchase thereof as aforestated in 1925." The court found further that the plaintiff is an old lady, seventy-eight years of age, residing with her brother Frank Coykendall and that this Frank Coykendall was the plaintiff's active agent in procuring a deed to these premises from Harry Coykendall and that this "was done for the sole purpose of obtaining title in the said Ella Coykendall to be afterwards transferred" to him; that he "had actual knowledge of the outstanding deed of the defendant,

Pearl Briggs;" and that this knowledge came to him before he got the deed from Harry Coykendall to his sister the plaintiff; that all of the "negotiations leading up to the execution of the deed from Harry Coykendall to plaintiff were done at the dictation and behest of the said Frank Coykendall . . . and that the same was done with full knowledge that Pearl Briggs . . . had a contract, and subsequently obtained a deed to said premises prior to the obtaining of the deed to the said Ella Coykendall and that such deed was obtained with full knowledge of the outstanding deed to the defendant . . . and was done fraudulently, etc. . . ."

The question involved is one of fact solely. The findings of the trial court are entitled to appreciable weight when the case is before this court on a trial de novo, especially when the witnesses appeared before him personally and he had the advantage of observing their demeanor. See Christianson v. Farmers' Warehouse Asso. 5 N. D. 438, 444, 32 L.R.A. 730, 67 N. W. 300; Doyle v. Doyle, 52 N. D. 380, 389, 202 N. W. 860; First Nat. Bank v. Weiss, 54 N. D. 883, 887, 211 N. W. 979.

It is unnecessary to set forth all of the testimony. It is true the plaintiff specifically denies that at any time before plaintiff's deed was recorded she knew Pearl Briggs had a deed to the land. It is also a fact that defendant Pearl Briggs does not state specifically that she told the plaintiff or her uncle Frank she had a deed. However she does say the transactions between her and her brother Harry covered a considerable period of time; and that early negotiations took place in the home of the plaintiff. The record shows the plaintiff—the aunt of Pearl Briggs and her brother Harry—was a mother to these two after their own mother died and they lived in her home, there they discussed their affairs, and consulted her frequently. Pearl Briggs says: that all of the transactions were talked over with plaintiff; that her aunt knew she had made a deal with her brother to buy his land; that her aunt knew she had borrowed $1,000 and paid the greater portion of it to her brother Harry as part payment on the land; that these transactions took place in her aunt's home; that her aunt furnished her the paper upon which to write the receipt; that her uncle Frank, the brother of the plaintiff, knew she was in possession of the land under a claim of title; that a witness by the name of Brending had told

her uncle Frank long before the deed to the plaintiff was obtained that Harry had deeded the land to defendant, and that he had received a letter from Harry to that effect. It is true that this witness Brending makes his testimony much stronger than he did in the case between these same parties, which was determined by this court before. In the former case his mind was hazy as to when he had the conversation with the uncle. In this case he testifies positively as to the time. The letter is in evidence and is dated April 1st, 1927. He says he told the uncle about the deed, shortly after he got the letter, and in April of that year.

Of course this testimony for defendant is flatly contradicted by the plaintiff and her witnesses. The plaintiff does say however the defendant and her brother discussed their affairs with her and further she says: "I knew she (Pearl Briggs) wanted to buy it," referring to the land. The record shows also, that prior to this time plaintiff had transferred all of her property to her brother Frank upon his agreement to keep her for the rest of her life and give her annually a certain amount of money; but yet she claims she bought the land from her nephew Harry for herself paying him $50 therefor and assuming the mortgages against the land. This was done, she said, to keep the land in the family as she heard Brending was wanting to buy it.

Testimony given by the witnesses at the trial of the other case was brought in on cross-examination. The trial court, heard the witnesses testify and heard the former testimony read.

We have carefully considered all of the testimony showing the age of the plaintiff, her dependence on her brother Frank for business management of whatever property she had, the relationship between the plaintiff and the defendant and her brother, the active part which the uncle Frank took in the matter, and the testimony presented by the defendant. The findings of the trial court are in accord with the weight of the evidence and so the judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.