Carl Arthur **FREDERICKSON**, Respondent,

v.

**Walter R. HJELLE, Highway Commissioner of the State of North Dakota, Appellant.**

**No. 8305.**

Supreme Court of North Dakota.

March 16, 1967.

Rehearing Denied April 14, 1967.

Honorable Helgi Johanneson, Atty. Gen. and Jon R. Kerian and Kenneth N. Erickson, Asst. Attys. Gen., Bismarck, for appellant.

Bosard, McCutcheon & Coyne, Minot, for respondent.

ERICKSTAD, Judge (on reassignment.)

This is an appeal by Walter R. Hjelle, Highway Commissioner for the State of North Dakota, from a judgment of the District Court of Ward County dated June 2, 1965. It arises out of a condemnation proceeding brought by the State Highway Commissioner, hereafter referred to as the Commissioner, to acquire certain real property to be used in widening and dividing U. S. Highway 83.

To acquire possession of the land, the Commissioner offered to purchase for $3,-615 from Mr. Frederickson 4.3 acres of land bordering the then existent right of way of U.S. Highway 83 approximately 10 miles north of the city of Minot. The amount of the offer was deposited with the Clerk of the District Court of Ward County.

Mr. Frederickson appealed therefrom to the district court on July 17, 1963, pursuant to § 14 of our State Constitution and § 24-01–22.1, N.D.C.C., asking that a jury determine the damages resulting from the State's taking of the land. Determination of the damages by jury was later waived in favor of a determination of the damages by the district court.

Following the submission of evidence on the part of Mr. Frederickson and the Commissioner the court found the value of the land taken to be $8,600 and assessed severance and consequential damages in the sum of $3,600, thus ordering judgment in the sum of $12,200. From judgment rendered in accordance therewith the Commissioner appeals. Trial de novo is demanded.

In 1956, before the Minot Air Base was developed but while it was being discussed as a possibility, Mr. Frederickson acquired an undivided one-half interest in a strip of

land 330 feet wide, extending approximately one-fourth mile along the east side of U.S. Highway 83 approximately 10 miles north of the city of Minot. In 1959 he acquired the other undivided one-half interest in the land. During the trial he testified on one occasion that he paid $60 an acre for the land, whereas on another occasion he testified that he paid $300 for the first one-half and $500 for the second one-half interest.

Before the taking by the Commissioner, Mr. Frederickson sold to the Great Northern Railway for $1,800 a strip of land 100 feet wide, extending the full depth of the tract from west to east, to be used as a spur track to the air base. This sale divided the 10 acres so that there remained a strip of land extending approximately 870 feet north and approximately 350 feet south of the railroad right of way. The taking by the Commissioner of the west 159 feet reduced the depth of the tracts remaining to 171 feet.

What Mr. Frederickson as landowner is entitled to receive as just compensation as the result of the condemnation proceeding is governed by § 32–15–22, N.D.C.C., which reads as follows:

32–15–22. Assessment of damages.— The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed;

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be con-

demned and the construction of the improvement in the manner proposed by the plaintiff;

3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages;

4. If the property is taken or damaged by the state or a public corporation, separately, how much the portion not sought to be condemned and each estate or interest therein will be benefited, if at all, by the construction of the improvement proposed by the plaintiff, and if the benefit shall be equal to the damages assessed under subsections 2 and 3, the owner of the parcel shall be allowed no compensation except the value of the portion taken, but if the benefit shall be less than the damages so assessed the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the portion taken;

5. As far as practicable, compensation must be assessed separately for property actually taken and for damages to that which is not taken.

North Dakota Century Code.

■ Under that statute the landowner is entitled to be paid the value of the land taken plus the damages which accrue to the remainder of the land by reason of its severance from the part taken and the construction of the highway. Wishek Investment Co. v. McIntosh County, 77 N.D. 685, 45 N. W.2d 417; Lineburg v. Sandven, 74 N.D. 364, 21 N.W.2d 808.

During the trial four persons who qualified as experts in the field of land appraisal gave their opinions as to the value of the land taken as well as the severance or consequential damages to the land retained by Mr. Frederickson.

Mr. Frederickson, the owner of the land, after qualifying as an expert, estimated the

value of the land prior to the taking at $41,-000 and after the taking at $14,000. He concluded that $27,000 would be just compensation for the taking, including severance damages.

Mr. Odell, testifying on behalf of Mr. Frederickson, after qualifying as an expert, estimated the value of the land before the taking at $43,502 and after the taking at $27,479, the difference of $16,023 being just compensation for the land taken, as well as severance damages to the remaining part of the land.

Mr. Rasmuson, testifying on behalf of the Commissioner, after qualifying as an expert, estimated the value of the land before the taking at $7,800 and after the taking at $2,-700, the difference of $5,100 being just compensation for the taking, plus the severance damages.

Mr. Swenson, employed by the Commissioner as a staff appraiser, after qualifying as an expert, estimated the value of the land before the taking at $9,200 and the value of the land after the taking at $3,600, leaving a difference of $5,600 as just compensation for the land taken and the severance damages.

Although no specifications of error have been assigned as such, from an examination of the argument contained in the Commissioner's brief we have concluded that the Commissioner poses three points, the consideration of which, he believes, will result in either a new trial or a reduction in the judgment.

The first point made by the Commissioner is that the trial court committed prejudicial error in permitting Mr. Frederickson to testify as to the price paid by the railroad for the 100-foot strip of land it purchased from Mr. Frederickson in 1957. His contention is that a sale made to a party having the power to condemn does not show market value of the land, as it is not a sale between a willing buyer and a willing seller but represents in effect a forced sale.

In support of this contention the Commissioner refers the court to 5 Nichols, Eminent Domain § 21.33, at 465–468 (3d ed. 1962) as follows:

* * * Evidence showing what the company seeking to condemn has paid for other lands would probably be taken by the jury as indicating the market value when, as a matter of fact, it does not tend to show the market value of the land. A company condemning land might be willing to give more than it is worth, and the owner of land might be willing to take less than it is worth, that is, less than its market value, rather than have a lawsuit. Moreover, when a company seeks to get land or condemn it for public uses, having the power to condemn, the landowner would probably come to some agreement with it rather than have a lawsuit, and this agreement would show a compromise rather than the market value of the land. * * *

He points out that *Nichols* cites our case of Reeder, Adams County v. Hanson, 55 N. D. 331, 213 N.W. 492, at page 494, in which this court said:

The principal assignment of error, predicated upon rulings on the admissibility of evidence, concerns evidence adduced by the plaintiff to show the value of the land sought to be condemned. Among the many errors so assigned is one relating to the admission of the testimony of one Hamann. He testified that he is a supervisor of Reeder township and resides some three miles east of the village of Reeder; that as supervisor of said Reeder township he had bought land from different parties for road purposes. His testimony did not show when these lands were bought or where they were situated within the township, and yet he was permitted to testify, over appropriate objection on the part of the defendant challenging the admissibility of the evidence, that the highest price he had paid for any of the land so purchased for road purposes was·

"$25 an acre, including the damage." The inadmissibility and prejudicial character of this evidence is, we think, too clear for controversy, and must of necessity result in a reversal of the judgment. Whether the value of lands can be shown by evidence of prices paid at actual sales of other lands in the neighborhood is an open question in this jurisdiction; but, even in those jurisdictions where evidence of other sales is held to be admissible for the purpose of proving value, the evidence is restricted to voluntary sales, not too remote in point of time, of lands of similar character in that immediate vicinity. * * *

Further in support of his contention he refers the court to 1 Orgel, Valuation Under Eminent Domain § 147, at 615–618 (2d ed. 1953) and the Iowa decisions of Simons v. Mason City & Ft. D. R. Co., 128 Iowa 139, 103 N.W. 129, and Basch v. Iowa Power & Light Co., 250 Iowa 976, 95 N.W. 2d 714.

■ Notwithstanding our decision in 1927 in *Reeder* and the other authorities cited by the Commissioner in support of the exclusionary rule, in light of the changed conditions and the present prevalence of land acquisitions by branches and agencies of the state and federal governments and by others, we believe that the better rule is that the admission of evidence of the price of a sale to one having the power of eminent domain is within the trial court's discretion. This is in accord with what has been said in 5 Nichols, Eminent Domain § 21.33, at 472–477 (3d ed. 1962), as follows:

There has been some dissatisfaction with the rule of exclusion set forth above and in some jurisdictions it has been held that such evidence is admissible if the land was in fact similar and it was shown that the transaction was not influenced by any fear of litigation. Thus, it was held in one case that the mere fact that one of the parties to a sale had the power to condemn does not of itself make the sale compulsory, at least where there had been no step taken to exercise such power before the sale was negotiated. * * * The view has been expressed that the objection to such evidence goes to its weight rather than its admissibility. It has been said that the courts which adhere to the rule of exclusion have seemingly adopted the more pronounced phenomena incident to sales to a condemnor as a conclusive test of their probative character. Although such sales are less likely to have useful evidentiary value than sales to strangers, no logical reason in principle is perceived why they should not have the same treatment. Their relative immunity from irrelevant influences is merely a matter of degree, and their reasonable freedom therefrom purely a matter of proof. The test of the probative character of a given sale of either class is to be found in answer to the inquiry whether the motivating circumstances influencing the parties thereto were such as would probably materially affect the price paid, and therefore destroy its usefulness as a standard of value. The issue presented in applying such test, like the issues of similarity and other comparable conditions of the property, is for the determination of the trial justice. In other words, just as the trial court must find sufficient similarity and likeness of conditions of the property sold to the property in question before the evidence of the sale is relevant, so, where the offer is of a sale to the condemnor, the court must likewise find that the circumstances of the sale, as respects the freedom of contract, are such that the sale has some tendency to evidence market value before it is relevant.

It has been held by the Supreme Court of South Carolina that evidence of such sale will be admitted when no other is available. Charleston & W. C. R. Co. v. Spartanburg Bonded Warehouse, 151 S.C. 542, 149 S.E. 236.

For a decision holding that a sale to one having the power either to purchase or to take by eminent domain is not for that reason alone to be excluded, see Amory v. Commonwealth, 321 Mass. 240, 72 N.E.2d 549, 174 A.L.R. 370. Other pertinent decisions are: New Jersey Highway Authority v. Rue, 41 N.J.Super. 385, 125 A.2d 305; State ex rel. State Highway Commission v. Bruening, 326 S.W.2d 305 (Mo.1959).

In Puerto Rico Housing Authority v. Valldejuli Rodriguez, 71 P.R.R. 600, the court held that in determining whether such sales were voluntary, the trial court must exercise sound discretion.

■ In light of the fact that there were no sales in this area other than the sale to the railroad and no evidence indicating that the sale was not a voluntary one, we believe that the admission in evidence of the sale price of the land to the railroad was relevant and that the trial court did not abuse its discretion in receiving this evidence. It is significant that Mr. Frederickson testified that he did not know at the time the sale was being negotiated that the railroad had the power of eminent domain and that no evidence was offered by the Commissioner in refutation of this testimony.

■ As this is a case being tried anew in the Supreme Court, we view this evidence for what we believe it to be worth, in conjunction with the other testimony relative to comparable sales.

The Commissioner's second point is that in computing just compensation, Mr. Odell made an arithmetical error, resulting in an inflated estimate of just compensation which the trial court accepted in determining the award. In valuing the property at $35 per front foot before taking and at $23.50 per front foot after taking, he got the sum of $16,023 as just compensation. Multiplying the front footage of 1,186 by the estimates of value before and after, he should have arrived at the sum of $13,639,

rather than the sum of $16,023, as just compensation.

■ In light of the trial court's finding that $12,200 constituted just compensation, and as this is $3,823 less than Mr. Odell's estimate of just compensation, it is unlikely that the trial court was misled by Mr. Odell's errors in arithmetic.

■ On a trial anew in the Supreme Court we are not bound by errors of arithmetic and thus are free to correct the errors and utilize the correct figures in connection with our determination.

■ As we have said on other occasions, the trial court's memorandum opinion may not be used to impeach the trial court's findings of fact which accompany its conclusions of law and order for judgment. See: Kack v. Kack, 142 N.W.2d 754 (N.D. 1966); Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966).

The third point asserted by the Commissioner is that the sales relied upon by Mr. Frederickson and his appraiser, Mr. Odell, were not sufficiently comparable in use, location, size, and otherwise to be relevant in determining the market value of the land condemned. In analyzing this contention we shall attempt to review briefly the evidence relating to it.

In concluding that he was entitled to $27,000 for the taking and the severance damages, Mr. Frederickson multiplied the front footage of 1,186 by the width footage of 159, which gave him 188,574 square feet. He then estimated the value of the land taken at 10.5 cents per square foot, which gave him a total value in round numbers for the land taken of $19,800. He estimated the severance damages at $7,200, without explaining how he arrived at that figure. Adding the two figures together, he got the sum of $27,000 as just compensation for the land taken, plus the severance damages.

He testified that the soil was Barnes-type loam; that the land was level and approxi-

mately of road grade, with good drainage; that there was REA service along the south edge of the property; that a natural gas pipeline was situated across the road from the property; that telephone service was available; that neighbors had found water at a 40-foot depth, with a better grade of water at a 60-foot depth; that the property is traversed by the Great Northern Railroad spur track to the air base; that the predominant feature affecting the value of the property is its location cater-cornered from the south gate of the air base, which is approximately one mile south of the main gate; and that Ruthville, a small settlement, is approximately two miles south of the property.

He points out that since the taking, the north part of the property no longer has access to Highway 83, although it is fronted by an access road which joins Highway 83 farther north. He states that although the Commissioner took only 159 feet, he has lost another 75 feet because the regulations require that buildings be set back 75 feet from the edge of the right of way, leaving only 96 feet upon which buildings may be constructed. It is his contention that the remaining 96 feet is not suitable for commercial lots, being insufficient in depth and leaving no room for parking of vehicles.

It should be noted, however, that the Commissioner contends that the set-back is only 70 feet and that vehicles may be parked on it.

Mr. Frederickson stated that he based his opinion as to value upon two sales which he considered comparable. The first sale was the Jack to Vannett sale, which was of a tract 100 feet by 350 feet, adjacent to Highway 83 approximately 3 or 4 miles north of Minot, which sold for $3,700 or $37 per front foot. This tract was sold in 1961 to be used for the location of a body shop.

The second sale which Mr. Frederickson thought to be comparable was the Jack to Souris River Mutual Aid Corporation sale, which was a sale of a tract 300 feet by 350 feet adjacent to Highway 83 north of Minot near the Vannett propery. This sale was in 1962 at $28.50 per front foot. The tract was located a little north of the city airport.

Mr. Odell, who testified on behalf of Mr. Frederickson, stated that he based his opinion as to the value of the Frederickson property on a study of the two sales which Mr. Frederickson testified to and another sale made in 1961 of a tract east of Minot which consisted of six 66-foot strips adjacent to Highway 2, approximately 1,100 feet in depth. He stated that this sale came to $45 a front foot, and that the property was located between a stockyard and a salvage yard.

He said that he considered the fact that the Frederickson land was zoned agricultural but appraised it as highway commercial retail.

Mr. Rasmuson, testifying on behalf of the Commissioner, stated that he based his opinion as to the value of the Frederickson property and the damages to it by the taking and severance damages by a study of four sales on Highway 2 east of Minot, four sales on Highway 83 north of Minot, and five sales of farmland in the general vicinity.

The four sales east of Minot were as follows:

The first was the Enger to Magic City "66" sale for commercial purposes in 1959 of a tract 300 feet by 300 feet at a price of $2,000. This sale, he said, represented a price of $6.60 per front foot or 2.2 cents per square foot.

The second sale was a sale in 1960 to Carlson of a tract 100 feet by 240 feet for $1,000. This sale, he said, was within 500 feet of the general area of one of Mr. Odell's sales.

Sale No. 3 was the sale of Monagin to Strucksnes in 1959 of a tract 165 feet by 1,224.6 feet for $5,000.

Sale No. 4 was a sale in 1961 to Highway 52 Coal Company of a tract 396 by 1,224.6 feet.

He said that all four of these sales were close to Minot in an area that was being developed as commercial, whereas there was no commercial development near the Frederickson property at the time. He stated the best use of the Frederickson property as "strip commercial with interim use being agricultural until the zoning was changed to light commercial."

The four sales on Highway 83 north of Minot were as follows:

Sale No. 1 was the Jack to Vannett sale in 1961 of a tract 100 feet by 350 feet for $3,750. This came to a front foot price of $37.50.

Sale No. 2 was the Jack to Westland Oil sale in 1959 of a tract 300 feet by 350 feet for $10,000. This tract was located one mile five hundred feet north of the Minot city limits.

Sale No. 3 was the Linha to Ahman sale in 1961 of a tract of land 300 feet by 360 feet for $7,500. He stated that this property was located about 500 feet north of the Minot city airport on the east side of Highway 83 and that it is still lying idle.

Sale No. 4 was the Linha to Brezina Construction sale in 1963 of a tract 300 feet by 350 feet on the west side of Highway 83, located 300 feet north of the navigation flight path of the city airport, for $6,500.

Mr. Rasmuson stated that the land involved in all four of these sales is situated close to the city of Minot, is zoned "commercial," and has a service road in front and a platted alley in the rear.

Although Mr. Rasmuson stated that he based his opinion not only on the commercial sales east and north of Minot but on five sales of farmland, the trial court did not permit him to testify concerning the sale prices of the farmlands.

Mr. Rasmuson said that the value of the farmland would be the absolute minimum of the value of the Frederickson property, that the value of the property close to the city of Minot would be the highest value the Frederickson property could be considered to have, and that somewhere in between would be the market value. In arriving at his opinion as to the value of the property, he estimated the value of the parcel north of the railroad tracks before taking at $4,300 or $653 per acre or 1½ cents per square foot. He estimated the value of the parcel south of the railroad tracks before taking at $3,500 or $1,307 per acre or 3 cents per square foot.

He valued the south parcel higher than the north parcel because, although he believed both parcels had potential commercial use, he thought the south parcel had the greater likelihood of being used for commercial purposes, and because the access to the south parcel was better at the time of the taking.

He estimated the value of the parcel north of the tracks after the taking at $1,500 or $436 per acre or 1 cent per square foot and estimated the value of the parcel south of the tracks after the taking at $1,200 or $871 per acre or 2 cents per square foot. He stated that he took into consideration that the north gate of the air base is the main gate; that it is open to traffic all day; that it is about 1¼ miles north of the Frederickson property; that there is no commercial development across from the north gate; and that the closest commercial development is Ruthville, which is about 2 miles south of the Frederickson property.

He said that the Frederickson property is marginal because there is available for development approximately 1½ miles of frontage adjacent to the base next to the main gate, and that the greatest demand for property will be near the main gate. He said that there was a possibility that the Frederickson property could be

developed for commercial use within the reasonable foreseeable future and that this was reflected in his estimate of value of the property.

Mr. Swenson, who was employed by the Commissioner as a staff appraiser, said that he based his opinion as to the value of the Frederickson property on a study of comparable sales. He said that the highest and best use of the Frederickson property is the way it has been used in the last ten years. (It is conceded that the property had been used in the past for agricultural purposes.) He acknowledged that the part lying south of the railroad had a certain commercial potential. He said, in part:

> * * * Now, those tones don't ring very loud. It's a very, very subdued overtone of commercial use. The part north of there has very little commercial potential. The potential is there, but I mean the invitation for a prudent purchaser to go in and investigate. I could not find that there was much of an incentive for a purchaser to go in there and buy that.

He stated that he based his opinion on the fact that the property had been lying unused for a period of ten years during which there was heavy activity at the air base and on the fact that the property was zoned agricultural at the present time, although he conceded that there was a possibility the zoning might be changed.

In this respect he said:

> There's also the possibility that zoning may change. There's also the possibility that it will not change; and in appraising, I have always considered the zoning as it is at the time that the appraisal was made.

He gave his opinion as to the value of the Frederickson property after studying what he considered to be comparable sales.

The first sale was the Avery to Schaefer sale in 1962 of farmland 4 miles north of the Frederickson property on Highway 83.

The second sale was the Avery to Amrein sale in 1962 of 157 acres of farmland 4½ miles north of the Frederickson property on Highway 83.

Sale No. 3 was the Key to Udtke sale in 1961 of land adjoining the Minot Air Base on the south.

Sale No. 4 was the Detlaff to Marshall sale in 1961 of 18 acres of land 1 mile north and a little west of the Frederickson property.

Sale No. 5 was the Detlaff to School Board sale of 40 acres fronting on Highway 83 about 1 mile north of the Frederickson property.

Sale No. 6 was the Irvy to 500 Club sale in 1964 of 307 acres 7½ miles south of the Frederickson property on Highway 83 for $240 per acre. The transcript shows a total price of $3,200, which is obviously an error if the property consisted of 307 acres and sold at $240 an acre.

Mr. Swenson said that the property south of the railroad tracks before taking comprised 2.4 acres, and that he valued it at 8 cents per square foot, which totals $8,363.52. He determined the property north of the railroad tracks to comprise 6.6 acres, which he valued at $125 per acre for a total of $825, arriving at the sum of $9,188.52, which he rounded to $9,200 as the value of the property before the taking.

He determined that the property south of the tracks after the taking comprised 1.24 acres, and, valuing this property at 6 cents per square foot, he arrived at a total in round figures of $3,240. He determined the acreage north of the tracks after the taking to be 3.43 acres, which he valued at $100 an acre. Adding these together gives a total of $3,583, which

he rounded to $3,600 as the value of the land after the taking. Subtracting this figure from the value of all of the land before the taking ($9,200) leaves $5,600 as just compensation for the taking plus severance damages.

He admitted that his sales numbered 1 and 2 were not served by a gas line but was of the opinion that this was immaterial. He further admitted that these properties were not traversed by a railroad and that none of these sales was located between the two entrances to the air base, but he believed these factors to be immaterial. He conceded that as of 1963 the traffic count indicated that 5,000 cars daily travel on Highway 83 as far as the air base and that, of that number, 1,350 travel beyond it. He recognized a commercial aspect to the property south of the railroad tracks but not to the property north of the tracks. He apparently believed that the zoning was less restrictive on the parcel south of the tracks.

It should be noted that the zoning regulations were not made a part of this record, but that it was acknowledged by the parties that at the time of the taking of the property Mr. Frederickson and others had commenced an action to set aside the zoning regulations, and that the Ward County District Court had found the zoning regulations to be unconstitutional and had set them aside. That decision was apparently pending on appeal before this court at the time of the trial of the instant case. In Detlaff v. Board of County Commissioners of Ward County, 136 N.W.2d 835 (N.D.1965), we reversed the judgment of the district court which had held the zoning resolution unconstitutional and which directed the board of county commissioners to grant the petition to rezone.

The reason for our decision was that the petitioners had not followed the procedures provided in the zoning resolution for securing a building permit. We accordingly held that until an application for a building permit had been presented to and rejected by the board of county commissioners, the petitioners had not been adversely affected by the zoning feature alleged to be in conflict with the Constitution. Only those adversely affected may raise a constitutional question.

■ In light of the fact that even the appraisers for the Commissioner considered the Frederickson property to have some commercial potential, we do not believe that the trial court committed prejudicial error in receiving the testimony of experts based upon the study of sales which included sales for commercial purposes.

■ We believe that our view is amply supported by the authorities in this field.

Evidence of restrictions on the uses of property is admissible; and the probability of a change in such restrictions and the effect of such probability on the market value may be shown. Evidence of adaptability to a particular use which is proscribed by zoning regulations is admissible as bearing on value where removal of the restrictions is reasonably probable or where there is a showing that the regulation, if literally applied, would result in an arbitrary and unreasonable restraint on the use of the property * * *.

29A C.J.S. Eminent Domain § 273(2), at 1197–1198 (1965).

*Orgel* has this to say:

The courts have had little difficulty in reaching what seems to us to be a proper result in cases involving zoning ordinances. It is generally held that although an ordinance may prohibit the use of the property for certain purposes at the time of condemnation, yet if there is a reasonable probability that the ordinance may be changed or an exception made, the value for that purpose as affected by the existing ordinance may be considered.

1 Orgel, Valuation Under Eminent Domain § 34, at 167–168 (2d ed. 1953).

In Wishek Investment Co. v. McIntosh County, 77 N.D. 685, 45 N.W.2d 417, this court quoted with approval Montana Eastern Railway Co. v. Lebeck, 32 N.D. 162, 155 N.W. 648, 650, to the effect that in a condemnation action, compensation is not to be estimated simply with reference to the value of the land to the owner for the purpose it is then used, but with reference to what its present value is in view of the uses to which it is reasonably capable of being put.

■ Considering the fact that there were no identical sales (other than the sale of the 100-foot strip to the railroad) to aid the trial court in weighing the testimony of the appraisers, we believe that it was proper for the trial court to consider the sales upon which each of the appraisers based his opinion as to just compensation, the sales being sufficiently comparable to be relevant.

■ The findings of the trial court are entitled to appreciable weight when the case is before this court on a trial de novo, especially when the witnesses have appeared before him personally and he has had the advantage of observing their demeanor. City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372; Coykendall v. Briggs, 60 N.D. 267, 234 N.W. 74.

■ Notwithstanding this rule, we are not bound by the trial court's findings but must determine the facts for ourselves. In re Hendricks' Estate, 110 N.W. 2d 417 (N.D.1961).

Analyzing the evidence, we find that Mr. Frederickson based his opinion as to the value of the land on two commercial sales of tracts of land three or four miles north of the city of Minot on U. S. Highway 83. These tracts were six or seven miles closer to the city of Minot than the Frederickson property, in an area which had seen some commercial development, and thus were of more value.

Mr. Odell, who testified on Mr. Frederickson's behalf, based his opinion of the value of the Frederickson property on a study of the two sales which Mr. Frederickson had used as comparable sales and of another sale of a tract of land consisting of six 66-foot strips approximately 1,100 feet deep, adjacent to U. S. Highway 2, situated between a stockyard and a salvage yard. When cross-examined concerning the parties to the sale, he was unable to give the names of the parties. This indicates a lack of research into the circumstances of the sale.

The appraisers for the Commissioner have been more thorough in their search for comparable sales and have found, we believe, sales which are more comparable to the Frederickson property than the sales studied by Mr. Frederickson and Mr. Odell. We are accordingly inclined to give more weight to the opinions expressed by the Commissioner's appraisers than to the opinions expressed by Mr. Frederickson and Mr. Odell.

■ In taking 159 feet of the 330-foot depth of the tract extending 1,186 feet along the highway, the Commissioner has taken almost one-half of the property. When it is considered that regulations prevent the construction of buildings within another 70 to 75 feet of the right of way, there is left a tract of land having a depth for construction purposes of only 96 feet. Although parking space is an important part of any property bought for commercial purposes and parking is apparently permitted in the set-back area, the use of the 75 feet of the remaining 171 feet is clearly restricted. This constitutes more than a mere nominal damage to be considered in determining the severance damages.

It is our view that the property before taking was of the value of $10 per front foot and that, although the Commissioner took slightly less than one-half of the

tract in taking 159 feet, because of the set-back requirements which prevent the land-owner from constructing buildings within 70 or 75 feet of the right of way, the property has been reduced in value by more than one-half. Computing the value of the property before taking at $10 per front foot, we get $11,860. Subtracting therefrom the value we have ascribed to the property after the taking at $4 per front foot, which totals $4,744, results in a difference of $7,116, which we believe to be just compensation for the taking plus the severance damages. This represents a per acre value before taking of $1,318, or $5,706 for the 4.33 acres taken and severance damages of approximately $302 per acre or $1,410 for the 4.67 acres. In other words, we have valued the land before taking at $1,318 per acre and the land after taking at $1,016 per acre, making the severance damages to the land remaining approximately $302 per acre.

Stated in values per square foot, the land before taking was worth 3.02 cents per square foot and 2.33 cents per square foot after taking, which leaves .69 cents per square foot as the severance damages.

The case is therefore remanded with instructions to the trial court to modify the judgment consistent with the views expressed herein, so that the amount of the judgment attributable to just compensation is reduced from $12,200 to $7,116.

TEIGEN, C. J., and STRUTZ and KNUDSON, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.

On Petition For Rehearing.

Mr. Frederickson has filed a petition for rehearing in which he asserts that (1) this court should have awarded him attorney's fees as costs; and (2) this court improperly used the "before and after rule" in determining just compensation.

It is his contention in support of (1) that § 32–15–32, N.D.C.C., provides for an allowance of attorney's fees in the Supreme Court.

That section reads as follows:

32–15–32. Costs.—The court may in its discretion award to the defendant reasonable actual or statutory costs or both which may include reasonable attorney's fees. In all cases when a new trial has been granted upon the application of the defendant and he has failed upon such trial to obtain greater compensation than was allowed him upon the first trial, the costs of such new trial shall be taxed against him.

North Dakota Century Code.

He argues that this section applies to any court in which the case is tried, and that, as this court on a trial de novo is required to try the case anew, it applies on an appeal to the Supreme Court when trial de novo is demanded.

A trial de novo in the Supreme Court is not equivalent to a trial in the court of original jurisdiction, the most apparent distinction being that a trial de novo in the Supreme Court is a trial based upon the record made in the court of original jurisdiction.

If, however, a trial de novo in the Supreme Court were to be considered, as Mr. Frederickson contends it should be, as a new trial, the last sentence of § 32–15–32 would require that we assess the costs of the trial in the Supreme Court against him, as he failed to obtain in this court a greater compensation than was allowed him in the first trial.

To apply § 32–15–32 to a trial de novo on appeal in the Supreme Court would extend that section to a proceeding not intended by the Legislature. We ac-

cordingly hold that Mr. Frederickson is not entitled to attorney's fees as costs in conjunction with the appeal in this case.

As for (2), Mr. Frederickson alleges that this court has used and applied a rule which is not sanctioned by the prior decisions of the Court nor by statute. He states that there appears to be no sound reason why all of the prior rules of determination of damages in severance cases should be upset. His complaint is that we erred in determining just compensation by establishing the value of the property before the taking and afterward.

This is interesting in light of the argument made by Mr. Frederickson in his main brief on appeal, in which, in support of his contention that the trial court's finding should be upheld, he said:

Mr. Odell [an appraiser testifying on behalf of Mr. Frederickson] testified that in his opinion the value of the property before the taking was $43,502.00, and the value after the taking was $27,479.00, or a difference of $16,023.00 representing the value of the land taken and all damages arising therefrom.

Mr. Frederickson, the property owner, testified that in his opinion the value of the entire property before the taking was $41,000.00, and that after the taking the value was $14,000.00, representing total damages of $27,000.00, of which $19,800.00 represented the value of the property actually taken and $7,200.00 represented the severance damage.

If Mr. Frederickson is correct in his contention that we erred, it would appear that we must now ignore completely the opinions of Messrs. Odell and Frederickson as to the value of the property taken and the severance damages, because they arrived at their opinions through a similarly faulty approach.

However, we do not agree with Mr. Frederickson in this contention. We point out that we clearly established that the value of the land taken was $5,706, and that the severance damages were $1,410.

No objection having been made by either party to the introduction of evidence to show the value of the land before taking and its value after taking; the trial court having apparently used this evidence with other evidence in arriving at just compensation; and the parties having used the evidence on appeal in support of their contentions, we find no error in its use in this case.

We accordingly deny the petition for a rehearing and adhere to our opinion.

TEIGEN, C. J., and STRUTZ and KNUDSON, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.